CHARLES F. NYE et al., Appellants, *v.* TIMOTHY HOYLE et al., Respondents.

In 1835, N., who was the owner of a water privilege on a river, and connected therewith, a dam, pond, mills, land, etc., entered into a contract with P. and A., riparian owners below, having similar property, with intent as stated therein, "to constitute and create a new water privilege, which will require a portion of the lands, pond, sluice, ditch and river aforesaid so belonging to all the parties." The contract contained these covenants on the part of the respective parties and "his and their heirs, executors, administrators and assigns:" that the said "water privilege shall be and by these presents is made and created, * * * the water is to be taken from the said mill-pond" of N., "through his present ditch or canal, * * * and through the lands of the said parties, * * * and so much of the said lands, dam, ditch, canal aforesaid, and the lands necessary for making, repairing and maintaining the new ditch or canal belonging to the parties of these presents shall belong to the mill and water privilege hereby created." It was provided that the parties should own the new privilege in certain proportions. N. covenanted to keep and maintain his dam and ditch in good repair, and to rebuild the dam, if necessary, at his sole expense. P. and A. covenanted on their part to construct, maintain and keep in repair the new ditch or extension of the canal required for the new privilege. It was also provided that the old privileges should "be occupied,

possessed and enjoyed by the respective parties as heretofore, except that the new privilege hereby created is always to have a preference of water * * * and the lands, hereditaments and appurtenances necessary for the creation and full enjoyment of the new privilege shall be owned, possessed and enjoyed " as before mentioned. The work contemplated to create the new water privilege was done, and it was put into operation in the manner provided. Plaintiffs became the owners of the old mill privilege of N. and the property connected therewith, save as affected by and subject to the provisions of the contract. The old dam having been carried away by a freshet, plaintiff, pursuant to a contract with defendants, who had succeeded to the interests of P. and A. in the new privilege, rebuilt the dam; by the terms of said agreement the expense was to be borne in proper proportions by the parties upon whom the burden of maintaining the dam legally rested. In an action to recover a proportion of such expense, *held*, that under the original agreement the interests contributed respectively by the parties for the purpose of forming the new water privilege, attached to it and became the property of the owners thereof; that this necessarily included an interest in the dam and pond of N.; that although the interest so transferred by him was less than the entire title, the covenants on his part to maintain the dam and rebuild, if necessary, were in support of his grant, and the benefit thereof passed with the interests transferred to the covenantees, while the burden rested upon the part reserved ; and so, the covenant ran with the land and became binding on whomsoever should at any time own the same ; and that as plaintiffs were thus bound to rebuild, the action was not maintainable. *Cole* v. *Hughes* (54 N. Y. 444), *Scott* v. *McMillan* (76 id. 141), distinguished.

(Argued March 11, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 15, 1887, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This was an action by one riparian owner against another to recover one-half the expense of rebuilding a dam that furnished water to both.

On the 13th of May, 1835, one Noadiah Moore owned a water privilege on the Big Chazy river near the village of Champlain in the county of Clinton, and immediately below, on the same side of the river, was another water privilege belonging to Pliny and Amasa C. Moore. Connected with each

privilege were a dam, pond, mills and land belonging to the respective proprietors. The two pieces of property were so situated with reference to a bend•in the river that water could be taken from the dam of Noadiah Moore at the upper end of the curve, and carried by a canal across his land and the lands of Pliny and Amasa C. Moore to the lower end of the curve, and thus a greater fall or head of water could be secured than then belonged to the proprietor of either privilege. In order to accomplish this object, the owners entered into a written agreement, under seal, dated May 13, 1835, whereby it was covenanted and agreed between Noadiah Moore, as party of the first part, and Pliny and Amasa C. Moore, as parties of the second part, and his and their heirs, executors, administrators and assigns, that "a new mill and water privilege shall be and by these presents is made and created on the river Chazy below the present mills of P. and A. C. Moore, opposite the little cove, * * * and the water is to be taken from the said mill-pond of the said party of the first part through his present ditch or canal leading to his said mill, under the logway attached to said saw-mill, and through the lands of the said parties as may be most convenient and useful to the top of the bank opposite said cove, and so much of the said lands, dam, ditch, canal aforesaid, and the lands necessary for making, repairing and maintaining the new ditch or canal belonging to the parties of these presents, shall be attached to the mill and water privilege hereby created and belong to the parties as hereinafter mentioned. The dam of the party of the first part shall be kept and maintained tight and in good repair by the said party of the first part, and the ditch or canal leading to the said saw-mill is to be widened by the said party of the first part (so as to command and take at a low time the water of the river in preference to any other outlet), and the said ditch to be so widened and afterwards maintained, and the said dam to be maintained, repaired and rebuilt, if necessary, at the sole expense of the party of the first part, his heirs and assigns." Then followed a provision that the new ditch, or extension of

the canal, should be made through the lands of the parties and maintained and kept in repair at the sole expense of the second parties, their heirs and assigns. The first party was to have, own and use freely and fully, subject to certain restrictions, one-third part of the water privilege thus created, while the second parties were to have, own and use freely and without any restriction, two-thirds of the same. It was further provided that the first party, his heirs and assigns should "have, own and use," a piece of land belonging to the second party, situate at the foot of the new canal and comprising two and one-half acres. Also that "one-third of the water running in said canal, shall so, as aforesaid, belong to the party of the first part, and two-thirds to the parties of the second part, and the old and former privileges of the respective parties shall be and remain, and be used, occupied, possessed and enjoyed by the respective parties, as heretofore, except that the new privilege hereby created is always to have a preference of water when there is not enough for all; and the land, hereditaments and appurtenances necessary for the creation and full enjoyment of the new privilege shall be owned, possessed and enjoyed as hereinbefore particularly mentioned."

The agreement, which contained many other provisions not deemed material, was duly acknowledged September 11, 1837, and on the same day recorded in the proper county clerk's office. The new water privilege thus created was soon put into actual operation in the manner provided by said agreement.

After work on the new privilege had been commenced, and on January 1, 1836, Noadiah Moore conveyed to Freeman and Bartlett Nye, five acres of land west of and adjoining said mill-pond and old canal, upon which were certain mills and a part of the new canal, as well as a portion of the land overflowed by the dam in question, subject to all the conditions in the agreement of May 13, 1835, and subject also to the proviso that the grantees, "their heirs and assigns shall be charged with one-half of the repairs of the dam, to keep up the same, and of enlarging the present ditch, as contemplated in

the contract with Pliny and Amasa C. Moore relating to the new privilege, and as already begun." This conveyance covered the use of part of the water belonging to the old privilege of the grantor and also one-half of his share of the water belonging to the new privilege. It was recorded February 18, 1836. August 28, 1851, Noadiah Moore conveyed to the same grantees an undivided half of said two and one-half acres conveyed to him by the agreement of May 13, 1835, "subject to all the terms, conditions, provisions, restrictions and reservations" contained in said agreement and in said deed of January 1, 1836. This deed was recorded May 22, 1883. By these conveyances the grantees became tenants in common with Noadiah Moore of the old privilege and of his interest in the new privilege.

By the will of Noadiah Moore, admitted to probate April 11, 1859, all his water privileges, together with all the land, shops and buildings connected therewith, were devised to Pliny N. and Samuel M. Moore. The interest of Pliny N. Moore in the new privilege passed, under his will, to one Pliny Moore and the defendant Timothy Hoyle, and his interest in the old privilege to said Pliny Moore, and through him by an intermediate conveyance to Freeman Nye. By sheriff's deed the interest of Samuel M. Moore in the new privilege was conveyed to said Pliny Moore and Timothy Hoyle, and his interest in the old privilege to Freeman Nye, who thus became the owner, with Bartlett Nye, of all the old privilege, dam, pond and adjacent lands owned by Noadiah Moore on May 13, 1835.

When this action was commenced, as the trial court found, the plaintiffs owned all "the rights, interest and property" acquired by Freeman and Bartlett Nye under the above conveyances, and at the same time the defendants owned all the "rights, interest and property" that Pliny and Amasa C. Moore possessed or acquired under the agreement of May 13, 1835, and of all the interest in the new privilege that was devised by Noadiah Moore to Samuel M. Moore and Pliny N. Moore.

The old dam of Noadiah Moore was carried away by a

freshet in 1882 and a new dam was erected by the plaintiffs in the place thereof, pursuant to an agreement with the defendants that the ultimate expense should be borne in proper proportions by the parties upon whom the burden of maintaining the dam legally rested.

*Matthew Hale* for appellants. The covenant of Noadiah Moore contained in the agreement of May, 1835, was a personal covenant and did not run with the land. (*Cole* v. *Hughes*, 54 N. Y. 444; *Scott* v. *McMillan*, 76 id. 141.) Plaintiffs are not the owners of the dam or the land on which it stands, or of the pond, and, therefore, are not bound to maintain the dam, even though the covenant of Noadiah Moore did attach to and run with the land on which the dam was built. (*Hare* v. *Horton*, 5 Barn. & Ad. 715; *Conolly* v. *Vernon*, 5 East. 51; *Putten* v. *C. C. A. L. R. R. Co.*, 4 Biss. 35; *Gascoigne* v. *Barker*, 3 Atk. 9; *Whitman* v. *White*, 3 Caine's Cas. 104; *Oakley* v. *Stanley*, 5 Wend. 523; *Leroy* v. *Platt*, 4 Paige, 77; *Babcock* v. *Utter*, 1 Keyes, 409; 1 Abb. Ct. App. Dec. 27; Washburn on Easements, 34, 35.) If the covenant of Noadiah Moore, contained in the agreement of 1835, to maintain, repair and rebuild the dam, if necessary, was attached to and ran with any land of said Noadiah, it was not the old privilege, but the new water privilege created by said agreement. (*Phœnix Ins. Co.* v. *Continental Ins. Co.*, 87 N. Y. 407, 408; *Cole* v. *Hughes*, 54 id. 448; *Van Rensselaer* v. *Bonesteel*, 24 Barb. 363, 365, 368; *Denman* v. *Price*, 40 id. 213; *Webb* v. *Russell*, 3 Durnf. & East. 402; *Wheelock* v. *Thayer*, 16 Pick. 68; *Hurd* v. *Curtis*, 19 id. 462; 2 Wash. on Real Prop. [4th ed.] 284; 1 Smith's L. C. 149; *Cole* v. *Hughes*, 54 N. Y. 448, 449; *Scott* v. *McMillan*, 76 id. 141; *Dunlap* v. *Avery*, 89 id. 592.) There was no equitable obligation on the part of plaintiffs to maintain and repair the dam, by reason of their taking title with knowledge of the covenant contained in Noadiah Moore's deed to Freeman and Bartlett Nye, of January, 1836. (*Cole* v. *Hughes*, 54 N. Y. 444; *Scott* v. *McMillan*, 76 id. 141.)

*Chester B. McLaughlin* for respondents. Plaintiffs, as owners of the old privilege of Noadiah Moore with pond, dam, mills and land connected therewith, were bound to rebuild the dam at their own expense, because the covenant of Noadiah Moore runs with the land. (*Trustees, etc.,* v. *Lynch,* 70 N. Y. 447; 3 Kent's Comm. 449; *Cook* v. *Chilcott,* 18 Moak, 760; *Allen* v. *Culver,* 3 Den. 284; *Norfleet* v. *Cromwell,* 3 Am. L. T. 104; *Lindeman* v. *Lindsay,* 69 Penn. St. 93; *Hogan* v. *Barry,* 10 East. 47; *Noonan* v. *Orton,* 27 Wis. 300; *Norman* v. *Wells,* 17 Wend. 136; *Brownson* v. *Coffin,* 108 Mass. 175; *P. Ins. Co.* v. *C. Ins. Co.,* 87 N. Y. 400; *Dority* v. *Dunning,* 7 East. Rep. 253.) The plaintiffs are bound to maintain the dam, because they acquired title with notice of the covenant and subject to all the conditions, limitations and restrictions in the conveyance to Freeman and Bartlett Nye. (*Whitney* v. *U. R. R. Co.,* 11 Gray, 364; *Hills* v. *Miller,* 3 Paige, 254; *Trustees, etc.,* v. *Cowen,* 4 id. 510; *Barrows* v. *Richards,* 8 id. 351; *Wolf* v. *Frost,* 4 Sandf. Ch. 77; *Adams* v. *Van Alstyne,* 25 N. Y. 235; *Van Rensselaer* v. *Reed,* 26 id. 574; *Cook* v. *Chilcott,* L. R. [3d Ch. Div.] 694; *Jumel* v. *Jumel,* 7 Paige, 591; *Gilbert* v. *Pettler,* 38 N. Y. 165.) Plaintiffs are in error in claiming that the easement or burden of repairing the dam rests upon the one-third interest of Noadiah Moore in the new privilege, and that one-half of the burden and expense rests upon the defendants as owners of one-half of said interest. (*Plymouth* v. *Converse,* 47 Vt. 712; *Parsons* v. *John,* 68 N. Y. 62.) Defendants, as successors in title to Pliny and Amasa C. Moore, and also as owners of one-half of the interest of Noadiah Moore in the new privilege, may claim the benefit of the easement upon the servient estate, *i. e.* the old privilege, and the plaintiffs, if owners of only a part of the old privilege, are bound by the burden of the covenant to keep the dam in repair. (*Adams* v. *Van Alstyne,* 25 N. Y. 232; *Child* v. *Chappell,* 9 id. 225; *Hill* v. *Miller.* 3 Paige, 256; *Van Rensselaer* v. *Bonesteel,* 24 Barb. 369; *Van Rensselaer* v. *Brady,* 3 Den. 135.)

VANN, J.   By the agreement of May 13, 1835, a new water privilege was created, superior in fact and paramount in right to either of the old privileges.   The owners united their estates in order to form a new property, to be owned by them in certain proportions, taking a part of each for the purpose, but leaving the ownership of the remainder undisturbed.   The part contributed by Noadiah Moore was " the water   *   *   * to be taken from " his mill-pond through his canal, and so much of his lands, dam, ditch, canal, hereditaments and appurtenances as was necessary for the creation and full enjoyment of the new privilege.   The interest thus contributed was attached to the new privilege and was to belong to the owners thereof. It necessarily included an interest in the dam and pond, as it embraced not only the right to take all the water therefrom when there was not enough for all, but also so much of the lands, dam, etc., as was required.   The language used by the parties in their somewhat complicated agreement, shows that it was the intention of each owner to convey to the other the same interest in his contribution to the common enterprise that he was to have in the new privilege when it was created. This appears from the recital of an intention " to constitute and create a new water privilege which will require a portion of the lands, pond, dam, ditch and river aforesaid, so belonging to all the parties to these presents," as well as from the language used in creating the new privilege, attaching the lands, dam, etc., thereto, and providing that the parts thus annexed should belong to the parties in the proportions named.   To repeat their words, " so much of the said lands, dam, ditch, canal aforesaid   *   *   *   belonging to the parties of these presents, shall be attached to the mill and water privilege hereby created, and belong to the parties as hereinafter mentioned.   *   *   *   And the said party of the first part shall have and own   *   *   *   one-third part of the water privilege hereby created, and the said parties of the second part shall have (and) own   *   *   *   two-thirds of the said water privilege hereby created.   *   *   *   And the land, hereditaments and appurtenances necessary for the creation and full

enjoyment of the new privilege shall be owned, possessed and enjoyed as hereinbefore particularly mentioned."

Pliny and Amasa C. Moore also made their contribution to the undertaking, to be owned by themselves and Noadiah Moore, as proprietors of the new privilege, and as the latter had no land at the point where the power was to be utilized, they conveyed to him two and one-half acres of their land, so situated that the buildings to be erected thereon could be supplied with water from the new canal. This land, so conveyed to Noadiah Moore, was not a contribution to the joint enterprise, for he became the sole owner thereof, but was an inducement to him to enter into the agreement by which the new privilege was created. Each owner in connection with the conveyance of an interest in his contribution toward the new privilege, also covenanted, in behalf of himself, his heirs and assigns, to do certain things with reference to the subject of the grant, thereby adding to its value. Pliny and Amasa C. Moore covenanted to construct the new canal, to maintain it and keep it in repair at their sole expense, while Noadiah Moore covenanted on his part, among other things, to keep and maintain tight and in good repair the dam in question, and to rebuild the same, if necessary, at the sole expense of himself, his heirs and assigns.

We think that these covenants ran with the land because they were in terms between the parties and their respective heirs and assigns, were connected with the subject of the grant and entered into the value thereof. As an interest in the land, to which the covenants were annexed, was transferred, there was privity of estate between the covenanting parties. Although the interest transferred was less than the entire title and the residue was reserved by the grantor, the covenants were in support of the grant and related to the beneficial enjoyment of the thing granted. The benefit of the covenants, therefore, passed with the interest transferred to the covenantee, while the burden rested upon the part reserved by the covenantor, and became binding upon whomsoever should at any time own the same. (*Norman* v. *Wells*, 17 Wend. 136, 146;

*Hart* v. *Lyon,* 90 N. Y. 663; *P. Ins. Co.* v. *C. Ins. Co.,* 87 id. 400, 408; *Trustees* v. *Lynch,* 70 id. 440, 450; *Wilbur* v. *Brown,* 3 Den. 356; *Fitch* v. *Johnson,* 104 Ill. 111; *Manderbach* v. *B. O. Home,* 109 Penn. 231; *Cooke* v. *Chilcott,* 18 Moak, 760; *Spencer's Case,* 1 Smith's L. C. 175, 212; *Morse* v. *Aldrich,* 19 Pick. 449; *Bronson* v. *Coffin,* 108 Mass. 175; Devlin on Deeds, § 940; Gould on Waters, § 301.)

These views do not conflict with *Cole* v. *Hughes* (54 N. Y. 444), or *Scott* v. *McMillan* (76 id. 141), which hold that a covenant to contribute toward the construction of a party-wall built by one owner, whenever the other owner should use it, did not run with the land, because neither received or granted any interest in land. In the former case the court said: "He (the covenantor) simply assented that Dean might build one-half of the wall on his land and then he agreed that in a certain contingency, which might or might not happen, he would compensate him. He did not convey to Dean any land upon which the wall was built. They continued to own the land, as before, in severalty."

It is contended, however, that the plaintiffs are not the owners of the dam or of the land on which it stands, and that, therefore, they are not bound to maintain or rebuild the dam, even if the covenant of Noadiah Moore runs with the land on which the dam stood.

The trial court found that "at the time of the commencement of this action plaintiffs were the owners of the old mill privilege, dam, pond and mills of Noadiah Moore and of his title as it was when the new mill privilege was created; also, of one-half of the interest of said Noadiah Moore in the new mill privilege, and one-half of the two and one-half acres acquired by Noadiah Moore in connection with said new privilege; that when they became such owners they had knowledge of the provisions, conditions and covenants contained in the conveyances referred to in the above findings, and their title was taken subject to all the reservations, restrictions and limitations in" the conveyances mentioned.

The several deeds and wills through which the plaintiffs

acquired their title, although referred to are not printed in the appeal book. The argument of the appellants in support of the position now under consideration is founded upon certain extracts from said deeds and wills, which describe, but whether as fully or not as the originals cannot be learned from the record before us, the premises conveyed or devised as " all my water privileges," or "all the water privileges," * * * "including furnace, wagon, shop and machinery, saw-mills, mill privilege near Pliny Moore's grist-mill and the privileges adjoining Whiteside's linen mill, bark-mill, etc., * * * and all of the lands, shops and buildings connected therewith." The extracts do not purport to give the complete descriptions and each includes the somewhat elastic phrase " and so forth." In no case are the metes and bounds given. Assuming, however, that the question sought to be raised is before us, we think that where it is apparent that the grantor or testator intended to dispose of the entire "mill property," the use of the phrase " all my water privileges," including the various mills and manufactories connected therewith, without a description by metes and bounds, includes the dam and pond, which are an essential part of the privileges and property. ( *Wetmore* v. *White*, 2 Caine's Cases, 87 ; *Babcock* v. *Utter*, 1 Keyes, 409 ; *LeRoy* v. *Platt*, 4 Paige, 77 ; *Hills* v. *Dey*, 14 Wend. 206 ; *Jackson* v. *Buel*, 9 Johns. 298 ; *Moore* v. *Fletcher*, 16 Me. 63 ; *Morgan* v. *Mason*, 20 Ohio, 401 ; *N. I. W. Factory* v. *Batchelder*, 3 N. H. 190 ; Gould on Waters, §§ 305–308.)

Whether there was an equitable obligation on the part of the plaintiffs to rebuild the dam, because they took title with knowledge of the covenant in the deed from Noadiah Moore to Freeman and Bartlett Nye, dated January 1, 1836, we do not think it is necessary to consider, as the conclusions already reached lead to an affirmance of the judgment.

All concur, except POTTER, J., not sitting.

Judgment affirmed.