DAVID P. MOREHOUSE et al., as Executors of CARRINGTON MACFARLANE, Deceased, et al., Respondents, *v.* CAROLINE B. WOODRUFF et al., as Executors and Trustees under the Will of NELSON BEARDSLEY, Deceased, et al., Appellants.

Contract — practical construction by parties thereto — action by owners of the bed and banks of a canal against assignees of leasehold interests in water privileges thereof to enforce contribution for moneys expended for repairs upon the canal — contracts and conveyances relating to canal and water privileges examined, and held, that the present owners of the fee and not the assignees of the leasehold interests should pay for the repairs — section 223 of the Real Property Law not applicable.

1. The doctrine applied that the practical construction which the parties by their uniform and unquestioned acts put upon the several instruments that passed between them is entitled to weight in determining their rights.

2. This action is brought to enforce contribution from the defendants for money expended for repairs made upon a canal wall and in keeping the canal in a fit condition for use. Plaintiffs are the owners of the bed and banks of a canal and certain water privileges appurtenant thereto, subject to certain leasehold interests granted by them and their predecessors in title. The defendants are the assignees of the leasehold interests and the right to collect the rents arising thereunder. The former owners, tenants in common of the property, made a series of leases in fee of one or more mill lots, granting to the lessees a perpetual right to specified quantities of water. Under the covenants therein "the maintenance and upkeep of the canal was first cast upon the lessors with the obligation on the lessees by way of indemnity to make ordinary repairs to the canal wall and the flow of water in front of their respective properties." On the death of one of the tenants in common the plaintiffs' decedent represented his interest as executor and devisee. The other tenant in common made sales to various persons, in making which he separated his interest, selling his interest in the leases and to the rents reserved to one set of purchasers and his reversionary interest, which is termed the "power fee," to plaintiffs' decedent. In the assignment of the leases he expressly covenanted

that there was no legal or equitable lien or claim of any kind upon the one-half part of said rents sold and assigned, and that he had a perfect legal right to make such assignment. There is nothing in these assignments to indicate that the assignee assumed the obligation of the assignor to make repairs. Later plaintiffs' decedent acquired the interest of his co-tenant in the fee of the property in question, subject to all the covenants given by said co-tenant in leases theretofore granted by him for water power in the canal, one of which was the covenant to repair. By virtue of the conveyances referred to, the plaintiffs are seized in fee of the canal subject (1) to the leases made by the tenants in common, and (2) to the right of the assignees of one of them to collect his share of the rent reserved in the leases. *Held*, that the obligation to repair which rested originally upon the tenants in common must fall upon the present owners of the fee, plaintiffs herein, and not upon the assignees of the leases who are entitled to collect the rent arising thereunder.

3. Section 223 of the Real Property Law creates no new right and does not, as between lessor and lessee or their assigns, enlarge the rights and obligations imposed upon either party by the terms of the lease. The present controversy has to do with the rights and duties of the owners of the fee as against the owners of the right to collect the rent reserved in the original leases. To such a situation that section has no application.

*Morehouse* v. *Woodruff*, 164 App. Div. 966, reversed.

(Argued May 1, 1916; decided July 11, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 23, 1914, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederic E. Storke* and *Elisha B. Powell* for appellants. The expenses in suit were assumed by the original plaintiffs, Macfarlane and Stebbins, in connection with their purchase of the power fee. Pardee's obligations under the leases were all assumed by the purchasers of his

half of the fee. (*Willard* v. *Tillman*, 2 Hill, 274; *Calvo* v. *Davies*, 73 N. Y. 211; *Nye* v. *Hoyle*, 120 N. Y. 203; *Kidder* v. *Ore Co.*, 201 N. Y. 448; *Countryman* v. *Deck*, 13 Abb. [N. C.] 110; *Dey* v. *Prentiss*, 90 Hun, 27; *Huyck* v. *Andrews*, 113 N. Y. 85; *Cottle* v. *Erie Co.*, 57 App. Div. 449; *Wilbur* v. *Warren*, 104 N. Y. 192.) The lessor obligations of the Carrington and Pardee leases bound the power fee, and both plaintiffs, as owners, without words of express assumption. (*Kidder* v. *Ore Co.*, 201 N. Y. 448; *Satterly* v. *Erie R. R. Co.*, 113 App. Div. 462; 210 N. Y. 134; *Moxley* v. *N. J. & N. Y. R. R. Co.*, 21 N. Y. Supp. 347; 143 N. Y. 649; *Post* v. *W. S. R. R. Co.*, 123 N. Y. 580; *Dey* v. *Prentiss*, 90 Hun, 27; *Countryman* v. *Deck*, 13 Abb. [N. C.] 110.) Thus a long period of practical construction concurs with physical probability, and express contract, in fixing on plaintiffs the sole liability for the expenses in suit. (*Carthage Mills* v. *Carthage*, 200 N. Y. 1.)

*David P. Morehouse* and *Ernest B. Millard* for respondents. When Myron Pardee assigned his interest in these leases to Willard and others, the law cast upon the assignees the duty of performing these covenants in the leases assigned, so far as Pardee was bound to perform them. (*Van Rensselaer* v. *Ball*, 19 N. Y. 100; *Van Rensselaer* v. *Hays*, 19 N. Y. 68; *Van Rensselaer* v. *Read*, 26 N. Y. 558.) The defendants' claim that, because it has not been shown that up to the time of the commencement of this action, they had contributed to the expense of maintaining this canal, and has not been shown that contribution has been demanded up to within about three years before the commencement of this action, a construction by custom of this contract is established, is not sound. (*Carthage Tissue P. Mills* v. *Vill. of Carthage*, 200 N. Y. 2; *Woolsey* v. *Funke*, 121 N. Y. 88; *Insurance Co.* v. *Dutcher*, 95 U. S. 269; *Miller* v. *Clary*, 147 App. Div. 263.)

SEABURY, J.   This action is brought to enforce contribution from the defendants for money expended for repairs made upon a canal wall and in keeping said canal in a fit condition for use.   The plaintiffs are the owners of the bed and banks of the Varick canal and certain water privileges appurtenant thereto, subject to certain leasehold interests granted by them and their predecessors in title.   The defendants are the assignees of the leasehold interests and the right to collect the rents arising thereunder.   The rights of the lessees under these leases are in no way involved and the lessees are not parties to this action and are not now before the court.

The Varick canal is situated on the west side of the Oswego river and runs along the west bank of said river parallel with the site for a state dam northerly a distance of about half a mile.   The canal is entitled to half the water of the Oswego river after the state's needs for navigation have been supplied.   The rights and obligations of the parties will be disclosed in tracing the title to the property in question.   The canal was originally the property of Abraham Varick, from whom it derived its name.   In 1834 Abraham Varick caused a map of the property to be made.   This map is referred to in the record as the McNair map.   This map shows the land between the canal and the river divided into mill lots. Through certain mesne conveyances the canal became the property of Ann Varick.   In 1846 Ann Varick conveyed the property to Frederick T. Carrington and Myron Pardee, as tenants in common, subject only to a lease, which is not involved in this action.   The deed to Carrington and Pardee conveyed the property "as the same was granted and conveyed to Abraham Varick by the original letters patent, * * * with water rights, privileges, leases, etc., except as specifically excepted."   There was no specific exception in the deed which affects in any way the rights of the parties to this action.   Under and by virtue of this deed Carrington and Pardee became tenants

32

in common of the property in question. Carrington and Pardee made a series of leases in fee of one or more mill lots, granting to the lessees a perpetual right to specified quantities of water measured by stone runs.

These leases of mill lots all contained the following covenant: "And it is further agreed between the parties hereto, that the said parties of the first part, their heirs or assigns, shall not, in any wise, be answerable for any damages or loss that shall, in any manner, arise to the said parties of the second part, their successors, heirs or assigns, in consequence of or by reason of any breach in the said canal, wall, dam or works therewith connected. But the said parties of the first part, their heirs and assigns, shall repair any breach or injury to the said canal or wall that shall arise from any freshet or from natural wear and decay within a reasonable time after being notified thereof; but the said parties of the second part, their successors, heirs or assigns, agree to keep the canal and wall in repair, and the canal of its present depth and width, or of such depth and width as the said canal shall hereafter be made by the said parties of the first part, their heirs or assigns, and keep the same free from grass, weeds and other obstructions on and opposite to the land hereinbefore demised."

The court below held that under this covenant "the maintenance and upkeep of the canal was first cast upon the lessors with the obligations on the lessees by way of indemnity to make ordinary repairs to the canal wall and the flow of water in front of their respective properties." There is no dispute or difference of opinion as to the meaning of this covenant to repair and the plaintiffs and defendants both accept as correct the interpretation which the learned court below placed upon it. In August, 1875, Carrington died and subsequently the plaintiff Macfarlane represented the interest of Carrington in the property in question as executor and devisee. In May, 1877, Pardee commenced to sell his interest in

the property.    To accomplish this end he made sales to
various persons.    In making these sales he separated his
interest, selling his interest in the leases and to the
rents reserved to one set of purchasers and his reversion-
ary interest, which has been referred to as the "power
fee," to Macfarlane.    The assignments of these leases
which Pardee made were all similar to the assignment
which he made to one Willard on May 16th, 1877.    The
description of the interest which Pardee purported to
transfer by means of these assignments is set forth in
the following language: "sold, assigned and conveyed,
and doth hereby sell, assign, transfer and convey to said
Willard, his heirs and assigns, an equal one-half share or
interest of, in and to the aforesaid Indenture or leases, and
in and to the rents agreed to be paid in and by the same
from and after the first day of May, 1877, etc."    In these
assignments of the leases, Pardee expressly covenanted
"that there is no legal or equitable lien or claim of any
kind upon the one-half part of said rents hereby sold and
assigned to said Willard and that he has a perfect and
legal right to make such assignment thereof."    The legal
effect of this so-called assignment of lease was to convey to
Pardee's assignee the right to collect Pardee's share of the
rent under the existing lease and limiting the right of the
assignee of the lease to collect rent only for the quantity
of water power specified in the lease assigned.    There is
nothing in these assignments of lease to indicate that the
assignee assumed the obligation of Pardee, the assignor,
to make repairs.    Having divested himself by means of
these assignments of the right to collect rent under the
leases, Pardee still retained his reversionary interest in
the property.    He was still the owner of an undivided
one-half interest in the fee of the canal, which interest
carried with it a right to the water privileges not specific-
ally demised.    As the owner of this reversionary interest
Pardee was subject to the obligation to make repairs
unless it can be held, as a matter of law, that the assignees

of the leases assumed this obligation to make repairs. On November 29th, 1884, Pardee and wife conveyed to Macfarlane his interest in the fee of the property in question together with his interest "to the bed and banks of said canal and the water rights and privileges appertaining to the whole or any part of the above described lots property except as herein excepted and excepting and reserving from this conveyance the leases in fee for water on said Varick Canal heretofore granted and conveyed and subject to all the covenants given by said Pardee in leases heretofore granted by him for water in said canal." Under and by virtue of this deed Macfarlane became seized of the interests of Pardee in the premises in question, except the leases in fee for water power which Pardee had theretofore granted. This interest Macfarlane took according to the express conditions of the deed to him "subject to all the covenants given by said Pardee in leases heretofore granted by him for water in said Canal." One of the covenants herein especially referred to was the covenant to repair that is set forth above. It is clear, therefore, that by virtue of the conveyances referred to above the plaintiffs are seized in fee of the Varick canal subject (1) to the leases made by Carrington and Pardee, and (2) to the right of the assignees of Pardee to collect Pardee's share of the rent reserved in the leases assigned by him. It remains to be determined whether the assignees of the leases who received the assignments from Pardee assumed the obligation to repair. If the assignees of those leases did not assume the obligation to repair, it is manifest that that obligation continued to devolve upon Pardee. If, after making these assignments, Pardee was obligated to make repairs, that obligation now rests upon the plaintiffs.

Notwithstanding that it is conceded that Carrington and Pardee, the original lessors, were bound by the covenants contained in the power leases to furnish the power and to make repairs, the courts below have held that the

covenant to make repairs followed the rent reserved in the leases and, therefore, devolved upon the assignees of the leases and did not follow the reversionary interest in the power fee. Thus the question is presented whether the obligation of the lessors to make repairs followed the rent and devolved upon the assignees of the leases or whether this obligation followed the fee and devolved upon the owners of the reversionary interest. Before approaching the question whether the assignees of the leases assumed the obligation to repair, it is necessary to have clearly in mind the nature and quality of the interest demised.

The original leases demising the right to use a specified quantity of water power constituted the grant of a continuous easement. (*Miller* v. *Clary,* 210 N. Y. 127, 131.) The same lease which demised the easement also expressly obligated the lessor to make repairs. By this lease the lessor demised less than the entire title. The covenant to repair was in support of the grant and related to the beneficial enjoyment of the easement granted. The residue of the title remained in the lessor subject to the burden of repair. As was said by Judge VANN in *Nye* v. *Hoyle* (120 N. Y. 195, 203): "The benefit of the covenants, therefore, passed with the interest transferred to the covenantee, *while the burden rested upon the part reserved by the covenantor,* and became binding upon whomsoever should at any time own the same." The easement and the covenant to repair ran with the property demised as a *benefit* and with the reversionary interest as a *burden.* (*Child* v. *Chappell,* 9 N. Y. 246, 255; *Trustees Col. College* v. *Lynch,* 70 N. Y. 440; *Nye* v. *Hoyle, supra.*) When Macfarlane purchased the reversionary interest of Pardee he assumed the burden involved in Pardee's obligation to repair which was annexed to that reversionary interest. This burden was inseparably attached to the ownership of the fee and devolved upon the purchaser of the fee although there was no express agreement to assume this obligation. (*Nye* v. *Hoyle, supra; Aikin* v.

*V. & C. R. R. Co.*, 26 Barb. 289.)    Although there was
not on the part of Macfarlane an express assumption of
this covenant, the interest which Macfarlane purchased
was acquired "subject to" the obligation of the lessor
to repair.    Macfarlane in taking the title to the reversion
"subject to" the covenant of Pardee to repair, was just as
much bound to make repairs as if he had expressly agreed
to assume the obligation.    (*Cottle* v. *County of Erie*, 57
App. Div. 449; affd., 173 N. Y. 591; *Geiszler* v. *De Graaf*,
166 N. Y. 339, 345; *Matter of Wilbur* v. *Warren*, 104
N. Y. 192; *Hetzel* v. *Easterly*, 96 App. Div. 517.)    It is
manifest that Macfarlane having purchased the fee of the
property from Pardee subject to the covenant to repair,
could not maintain an action for contribution against
Pardee.    If Macfarlane could not maintain such an action
against Pardee it follows that neither he nor the plaintiffs
that represent his interest can maintain such an action
against those to whom Pardee assigned the leases and the
right to collect the rent arising thereunder.    From what
has been said it is evident that the obligation to repair
which rested originally upon Pardee must fall upon the
owner of the fee and not upon the assignees of the leases
who are entitled to collect the rent arising thereunder.
The trial judge found that the plaintiffs acquired their
title to the fee "subject to the obligations to maintain,
operate, regulate and control said canal originally
imposed."    This finding is supported by the evidence to
which we have referred in tracing the title to the property
in question.    Such also is the legal effect of the convey-
ances that were made.    We find nothing in the contents
of any of the instruments referred to above which would
justify the claim that the assignees of the leases or
the right to collect the rent arising thereunder were
obligated to pay the expenses incurred in making repairs.
If the question be deemed doubtful, the practical con-
struction which the parties, by their uniform and unques-
tioned acts put upon the several instruments that passed

between them, would be entitled to weight (*Carthage T. P. Mills* v. *Vil. of Carthage*, 200 N. Y. 1, 14), and such construction is entirely in accord with the conclusion at which we have arrived. It appears that expenses similar to those sought to be recovered in this action were uniformly borne by the owners of the fee from 1877 to 1908. If doubt existed as to whether Macfarlane or the defendants succeeded to Pardee's obligation to repair, the fact that Macfarlane charged himself with these expenses every six months for a period of sixteen years, aids us materially in ascertaining the original intention of the parties. The learned Special Term refused to apply this rule, because in its opinion there was "nothing ambiguous in the covenants in this case." Assuming this to be true, there is nothing in any of these instruments which indicates that the obligation to repair should fall upon the defendants as assignees of the leases or of the right to collect the rent reserved therein. It is evident that a contrary interpretation would result in injustice and hardship to the defendants. The original lessees are limited to the use of the quantity of water specified. The defendants, as assignees of these leases and the right to collect the rent reserved therein, are limited to receiving the rent specified in the original leases. All water power in excess of that demised in the original leases is the property of the plaintiffs. The value of this excess power does not definitely appear, but it is necessarily inferable from the record that the right to this excess water power is a valuable right. The decision now under review frees the owner of the fee from any obligation to pay for repairs necessary to the maintenance of the canal. The rental reserved to some of the defendants as assignees of the leases is very small and under the decision now subject to review such an assignee, in the event of the other leases being surrendered to the plaintiffs, would have cast upon him the whole cost of maintaining and repairing the canal. Such an extreme and unjust result indicates

that it could not have been in contemplation of the parties to these original instruments.

The learned court below reached the conclusion that the whole cost of making repairs should be borne by the assignees of the leases and of the right to collect the rent reserved therein. This conclusion was not based upon anything contained in any of the instruments referred to above, because, as we have already shown, there is nothing in any of those instruments suggestive of such an obligation being devolved upon the assignees. The theory upon which the Special Term reached the conclusion that this obligation devolved upon the assignees was that section 223 of the Real Property Law makes the assignee of a lessor liable upon the covenants of said lessor to the lessee. Applying this construction of the statute to this case the Special Term concluded that, as the original lessor was obligated to make repairs, this obligation devolved not upon the grantee of the reversion but upon the assignee of the lease. Section 223 of the Real Property Law creates no new right and does not, as between lessor and lessee or their assigns, enlarge the rights and obligations imposed upon either party by the terms of the lease. (*Van Rensselaer* v. *Hays*, 19 N. Y. 68, 81.) In the case now under consideration the controversy is between the owner of the reversion and the owner of the right to collect the rent reserved in outstanding leases. There is no question as to the rights of the lessees or any person to whom the lessee may have assigned existing leases. There is no controversy here between the lessor and lessee or the assignees of either. Here we have an entirely different situation arising out of the fact that Pardee in disposing of his interest in the property in question separated the rent from the fee and sold to different groups of purchasers these separate and distinct interests. (*Willard* v. *Tillman*, 2 Hill, 274; *Childs* v. *Clark*, 3 Barb. Ch. 52.) The present controversy has to do with the rights and duties of the owners

of the fee as against the owners of the right to collect the rent reserved in the original leases. To such a situation section 223 of the Real Property Law has no application.

It follows that the judgment should be reversed, with costs in all courts, and the complaint dismissed, with costs.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK, CARDOZO and POUND, JJ., concur.

Judgment reversed, etc.