In the Matter of the Claim of BETSEY B. WILBUR, Respondent, v. the Estate of ENOS WARREN, Deceased.

An executory covenant, supported only by a meritorious, as distinguished from a valuable or pecuniary consideration, cannot be enforced either at law or equity.

One who purchases land, subject to a mortgage, makes the land thereby the primary fund for the payment of the mortgage debt, and this is so, although the deed contains a covenant on the part of the grantee to

pay the mortgage debt. The covenant is to indemnify the grantor against the contingency that the land may not bring enough to pay such debt.

W. purchased certain real estate, subject to a mortgage thereon, which by his deed he assumed and agreed to pay. He conveyed the land to his daughter by deed containing full covenants, in which no reference was made to the mortgage. The only consideration for the deed was natural love and affection. W., after the conveyance, paid part of the mortgage. The daughter, after his death, paid interest on the balance and for the amount so paid presented a claim against his estate. *Held,* that the land was the primary fund for the payment of the mortgage, and the daughter took it subject to that burden ; that the covenants in the deed were invalid and W. incurred no obligation, legal or equitable, to pay the mortgage in exoneration of the land; and that, therefore, the claim was improperly allowed.

*Cole* v. *Malcolm* (66 N. Y. 363) distinguished.

*In re Wilbur* v. *Warren* (40 Hun, 203) reversed.

(Submitted December 15, 1886 ; decided January 18, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department entered upon an order made April 17, 1886, which affirmed a decree of the surrogate of Chautauqua county, allowing a claim of Betsey B. Wilbur, administratrix of the estate of her father, Enos Warren, deceased, against said estate. (Reported below, 40 Hun, 203.)

The material facts are stated in the opinion.

*Frank W. Stevens* for appellant. The consideration of love and affection will not support an executory contract. (2 Kent's Com. 465 ; *Pearson* v. *Pearson,* 7 Johns. 26 ; *Fink* v. *Cox,* 18 id. 145 ; *Harris* v. *Clark,* 3 N. Y. 93 ; 2 Barb. 101 ; *Phelps* v. *Phelps,* 28 id. 121 ; *Craig* v. *Craig,* 3 Barb. Ch. 115 ; *Anthony* v. *Harrison,* 12 Hun, 198.) The right of subrogation does not arise until the demand to which subrogation is claimed has been actually paid by the one seeking to assert such right. (Sheldon on Subrogation, § 127 ; *Glass* v. *Pullen,* 6 Bush. [Ky.] 346 ; *Penn. Bk.* v. *Patius,* 10 Watts, 148 ; *Conway* v. *McCowan,* 53 Ill. 363 ; *Darst* v. *Bates,* 51 id. 439 ; *Gillian* v. *Esselman,* 5 Sneed. 86 ; *McConnell* v. *Beattie,* 34 Ark. 113 ; *Bridges* v. *Nicholson,* 20 Ga. 90 ;

*Magee* v. *Leggett*, 48 Miss. 139 ; *Comm.* v. *Canal Co.*, 32 Md. 501 ; *Kyner* v. *Kyner*, 6 Watts, 221 ; *Banks* v. *Benedict*, 15 Conn. 437 ; *Nield* v. *Hamilton*, 45 Vt. 35 ; *Vert* v. *Voss*, 74 Ind. 566.) No personal claim exists against Warren in favor of the mortgagee. (*Vrooman* v. *Turner*, 69 N. Y. 280 ; *Dunning* v. *Leavitt*, 85 id. 30.) The doctrine of subrogation is that, when one has been compelled to pay a debt which ought to have been paid by another, he is entitled to a cession of all the remedies which the creditor possessed against that other. (Sheldon on Subrogation, §§ 2, 11 ; *Mathews* v. *Aiken*, 1 N. Y. 605 ; *In re Hewitt*, 25 N. J., Eq. 210 ; *Hoover* v. *Epler*, 52 Penn. St., 522 : *Hamsburger* v. *Lancey*, 33 Grat. 527 ; *Cheeseborough* v. *Millard*, 1 Johns. Ch. 409 ; 1 Story's Eq. Juris., § 493 ; *Gans* v. *Thieme*, 93 N. Y. 232 ; *McCormick* v. *Irwin*, 35 Penn. St., 111, 117 ; *Heart* v. *Bryan*, 2 Dev. Eq. 147 ; *Acer* v. *Hotchkiss*, 97 N. Y. 402.) If the purchaser of mortgaged premises assumes the payment of the mortgage debt, the land is the primary fund of payment. (Thomas on Mortgages, 92 ; *Rubens* v. *Prindle*, 44 Barb. 336 ; *Russell* v. *Pistor*, 7 N. Y. 144 ; *Halsey* v. *Reed*, 9 Paige, 446.) If a surety is himself indebted to his principal against whom he asks to be subrogated, it will not be allowed to him without his first satisfying that debt. (*Coate's Appeal*, 7 Watts and Serg., 99.)

*A. Hazeltine* for respondent. The gift was of the land free and clear of all incumbrances, as the donor stated it to be in his deed, and the meritorious consideration was sufficient. (*Hunt* v. *Johnson*, 44 N. Y. 27 ; *Bucklin* v. *Bucklin*, 1 Abb. Ct. App. Dec. 1 Keyes, 146.) The land being but surety for the mortgage and the claimant being seized of it, subject to the lien of the mortgage, and having been compelled to pay the interest which became due, she is entitled to be subrogated to the rights and remedies of the mortgagee and should be allowed this claim. (*Barnes* v. *Mott*, 64 N. Y. 397, 402 ; Thomas on Mortgages, 92, 94 ; *Wadsworth* v. *Lyon*, 93 N. Y. 201 ; *Cole* v. *Malcolm*, 66 id. 363.)

ANDREWS, J.   The General Term sustained the decree of the surrogate, allowing the claim of Betsy B. Wilbur against the estate of her father, Enos Warren, for the amount of interest paid by her on the mortgage executed by her husband, Riley Wilbur, to Mary D. Miller, on the land subsequently conveyed by the mortgagor to Enos Warren, and by him to his daughter, on the ground that it was paid on his debt to protect her title to the land.

The facts may be briefly stated.   In 1866, the land now owned by the claimant being a farm of about ninety acres, was purchased by and conveyed to Riley Wilbur.   On the 2d of May, 1876, Riley Wilbur and his wife executed to Mary D. Miller a mortgage thereon for $2,400 to secure the bond of Riley Wilbur, executed concurrently therewith.   On the 5th of June, 1879, Wilbur and his wife conveyed to Enos Warren seventy acres of the land, subject to the mortgage, "which mortgage, with the bond accompanying it," the grantee in and by the deed agreed to pay as a part consideration for the conveyance.   On the same day Warren acquired title to the other twenty acres from one Blauvelt, to whom Wilbur had previously conveyed it.   On the 2d of December, 1380, Enos Warren, then of the age of 79 years, conveyed the ninety acres to his daughter, Betsy B. Wilbur, by deed expressing the consideration of $500, with full covenants, and containing no reference to the mortgage.   After Enos Warren acquired title, and before his conveyance to his daughter, he paid $1,400 on the mortgage, and at the time of his death in October, 1881, there was $1,000 of principal unpaid.   The interest paid by Mrs. Wilbur for which she claims reimbursement, accrued after the death of the intestate.   He left surviving him the claimant, a son, and the children of a deceased daughter, his only next of kin and heirs-at-law.   In fact, there was no pecuniary consideration for the conveyance to Mrs. Wilbur, the only consideration being natural love and affection.   Upon these facts the question arises whether there is any ground, legal or equitable, for charging the estate of

Enos Warren on account of the interest paid by Mrs. Wilbur on the Miller mortgage.

It is conceded by the General Term that the claimant has no remedy upon the covenants in her deed. It seems to be the general doctrine that an executory agreement supported only by a meritorious, as distinguished from a valuable or pecuniary consideration, cannot be enforced either at law or in equity, and an executory covenant falls within the operation of the rule. The leading cases on this subject are cited in *Whitaker* v. *Whitaker* (52 N. Y. 368). The claim of Mrs. Wilbur to be indemnified out of the estate of her father for payments made by her on the mortgage, cannot therefore be supported upon the basis of any contract between herself and him, by which he obligated himself to pay the mortgage. It is clear that if she had brought an action upon the covenants in her deed, against the personal representatives of her father, to recover the money paid by her, she must have failed. It would have been a conclusive answer to the suit that the covenant was without adequate consideration, and imposed no legal obligation on the covenantor to discharge the mortgage. It remains therefore to consider whether, independently of any contract between the parties, the intestate, nevertheless, by reason of the facts and circumstances disclosed, made the mortgage debt his own, so as to render his personal estate primarily chargeable with its payment in exoneration of the land. If this was the effect of the transactions, and the land in the hands of the claimant stood as between her and her father, as security merely for his debt, then it may properly be conceded that she would be entitled to be reimbursed out of the intestate's estate, for any payments on the mortgage made to protect her title. If, on the other hand, as between her and her father, the land was the primary fund for the payment of the mortgage, then it would seem to follow that no recourse could be had to his estate for payments made by the daughter thereon. The payments in that case would be payments made for her own benefit upon a debt against the land, the liability of the grantor on

his covenants in his deed from the mortgagor, being secondary only.

It is the settled doctrine in equity that one who purchases land subject to a mortgage makes the land thereby the primary fund for the payment of the mortgage debt. It is otherwise as between mortgagor and mortgagee when the bond of the mortgagor accompanies the mortgage in the absence of any statute regulation. In that case the bond is the principal thing and the mortgage is the incident. The debt is represented by the bond, and the mortgage is a collateral security for the personal obligation. But on a conveyance by the mortgagor subject to the mortgage, the plain meaning of the transaction between the parties is that the land shall pay the mortgage debt in exoneration of the personal liability of the mortgagor on his bond, and in equity on such a conveyance, the land is treated as the principal debtor, and the mortgagor as surety for the mortgage debt. If the deed in addition contains a covenant on the part of the grantee to pay the mortgage, the land still remains the primary fund for the payment of the mortgage. This question was very fully considered upon authority by the chancellor in the case of *Cumberland* v. *Codrington* (3 J. Ch. 229) and he declared the result of the authorities to be that " the mere covenant with the vendor to pay the mortgage debt does not shift the charge from the fund primarily liable." This is in accordance also with the real intent of the transaction. The essential purpose of such a covenant is to indemnify the mortgagor against the contingency that the land may not bring enough to pay the mortgage debt and thereby leave him exposed to a claim for a deficiency. (*Halsey* v. *Reed*, 9 Paige, 446.) Although the covenant may be in the form of a direct undertaking to pay the mortgage debt, and not a mere covenant of indemnity, yet that is its essential character. The covenant is treated as an additional security for the mortgage debt, and inures as a promise to the mortgagee, yet it is settled that it will support an action by the mortgagee only when the

immediate grantor of the covenantor is himself liable for the mortgage debt. (*King* v. *Whiteley*, 10 Paige, 465 ; *Vrooman* v. *Turner*, 69 N. Y. 280.) In *Halsey* v. *Reed* the grantor of premises, subject to a mortgage which was assumed by the grantee before making any payment thereon, brought an action against the covenantor on the covenant of assumption and recovered nominal damages only. He afterwards paid the mortgage and claimed the amount of the payment from the estate of his grantee. It was insisted that the former judgment was a bar, as the claimant might have recovered the whole amount of the mortgage in that action. But the point was overruled, the chancellor holding that until actual payment only nominal damages could be recovered. But even if the grantor could, on default of the grantee to perform his covenant to pay the mortgage, recover the whole amount thereof without having paid it himself, yet he would be bound to apply the sum recovered in satisfaction of the mortgage debt. Whichever view may be taken, the fact remains that indemnity is the primary purpose of such a covenant. Can it be doubted that, where the grantor is not himself liable for the mortgage debt and has no personal interest that the covenant shall be performed, he can recover nothing beyond nominal damages. The giving of a covenant by the grantee does not work a novation of the mortgage debt. It does not make the debt his own, except in respect to the estate (*Butler* v. *Butler*, 5 Ves. 534), and his liability is auxilliary and not primary. We think, therefore, there can be no doubt upon the authorities that when Enos Warren conveyed the mortgaged premises to his daughter the land was the primary fund for the satisfaction of the mortgage.

The remaining question is, whether the burden was shifted by the circumstances attending the conveyance to Mrs. Wilbur, rendering that which before was primarily a debt against the land, to which his covenant was collateral, his personal debt, to which the mortgage was incident. It was doubtless competent for the intestate upon a consideration to

change his position, and as between his daughter and himself, to make himself the principal debtor and the land the secondary fund for the payment of the mortgage. This probably would have been the effect of the covenants in his deed, except for their invalidity. It is said that the insertion of the covenants in the deed, although not enforceable as such, indicates an intention on the part of the father to himself pay the mortgage. The circumstances do indicate an intention on the part of the grantor to give the land to his daughter free from incumbrance. But this intention was never effectuated. The father died leaving the mortgage unpaid. The question is whether the existence of this unexecuted intention is sufficient in law or equity to shift the primary burden of the mortgage debt from the land and put it upon the father's estate. To hold this would, we think, be introducing a dangerous doctrine which, so far as we know, has no sanction in the law. The father incurred no legal or equitable obligation to pay the mortgage in exoneration of the land. The daughter took the land charged with the mortgage, and if she pays it out of her own means nothing is taken from her which her father had given her. If, on the other hand, the estate of the father is compelled to pay the mortgage she, in effect, is enabled to perfect an unexecuted gift to the prejudice of others interested in the estate. It may be admitted that, in a loose sense, there is an equity that her father's intention should be carried out, but an intention, not moved by any consideration recognized by the law as sufficient to create an enforceable obligation, is not, we think, sufficient to change the natural order of liability, as between the real and personal estate, in respect to an obligation, which, when created, was secondary and not primary. The intention of the father rested in intention merely, because no effectual act was done in execution of it. The case of *Cole* v. *Malcolm* (66 N. Y. 363) is not in point. There, lands conveyed by a husband to his wife, without consideration, were subsequently subjected to a charge in favor of creditors, which the heirs of the wife were compelled to

pay, and the court held they were entitled to be subrogated to the claim of the creditors against the husband. In that case there was a gift of land, unincumbered, without actual fraud, perfected by a conveyance, and in effect a portion of it was subsequently taken away through a latent equity in the creditors of the husband. The cases are quite dissimilar and do not rest on the same principle.

These views lead to a reversal of the judgment of the General Term, and of the decree of the surrogate, with costs to the executors out of the estate.

All concur.

Judgment and decree reversed.