(76 App. Div. 592.)

### WILLIAMS v. VANGEISEN.

(Supreme Court, Appellate Division, Fourth Department. November 25, 1902.)

1. FRAUDULENT CONVEYANCE—VALIDITY.
   Where a woman, without her brother's knowledge, deeded property to him to keep it from her creditors, and herself recorded the deed, and he, when it came to his knowledge, recognized the title as being in him by giving a mortgage on the premises at her request, he accepted the deed, and she could not thereafter recover back the property.

2. MORTGAGE—ASSUMPTION BY GRANTEE—LIABILITY FOR DEFICIENCY JUDGMENT.
   A woman deeded property to her brother to defraud her creditors; the deed being subject to a mortgage which she had executed, but not containing any clause whereby the grantee assumed to pay it. Afterwards, at her request, he deeded the property to defendant; this deed reciting that it was subject to the mortgage, "which said second party * * * agrees to assume and pay, and hold the party of the first part harmless therefrom; the same being a part of the purchase money." *Held*, that the assumption clause did not inure to the benefit of the mortgagee, so as to make defendant liable for a deficiency judgment; the grantor, the brother, not having been himself liable when it was made.

Appeal from special term, Orleans county.

Mortgage foreclosure by Ella I. Williams against Cornelius Vangeisen. Judgment against defendant for a deficiency arising from the sale, and he appeals. Reversed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

William E. Hobby, for appellant.

W. A. Matson and T. S. Dean, for respondent.

WILLIAMS, J. The judgment should be reversed, and a new trial ordered, with costs to appellant to abide event.

The question involved on this appeal is whether the plaintiff was

¶ 2. See Mortgages, vol. 35, Cent. Dig. § 1596.

entitled to recover a personal judgment against the defendant for the deficiency arising from the foreclosure and sale of the mortgaged premises. December 1, 1884, Esther O. Hart being the owner of the premises, she and her husband gave the bond and mortgage in suit to the plaintiff for $3,000, upon interest. The mortgage was duly recorded. November 30, 1886, Mrs. Hart made a deed of the premises to her brother West, and herself caused it to be placed upon record. This deed covered 40 acres of land, other than that included in the $3,000 mortgage. There was no consideration for the deed, and West did not know it had been made or recorded until nearly a year afterwards. It was given by Mrs. Hart for the purpose of hindering, delaying, and defrauding her creditors. October 6, 1887, Mrs. Hart told her brother West about the deed, and asked him and his wife to execute a mortgage upon the premises covered by the $3,000 mortgage to secure one Butler for a debt owing by Mr. Hart to him; and West and his wife complied with such request, and this mortgage was duly recorded. The deed from Mrs. Hart to West did not contain any clause providing that West assumed or agreed to pay the $3,000 mortgage, and West did not in any other way assume or agree to pay such mortgage. March 29, 1890, Mrs. Hart's husband negotiated with the defendant to sell him the premises covered by the $3,000 mortgage, for $3,500, to be paid by defendant $500 in cash, and he assuming and agreeing to pay the $3,000 mortgage; and, as a part of the arrangement, the mortgage to Butler was to be paid off and discharged. In the course of these negotiations it developed that West held the title to the premises, and that the deed would have to come from him. West, at the request of Mrs. Hart, made the deed to the defendant. The $500 was paid by defendant and was used to pay off the Butler mortgage, which was discharged. The deed by West to the defendant contained the provision:

"This conveyance is made subject to the payment of a certain bond and mortgage made by Esther O. Hart to Ella I. Williams, on which there is now due and unpaid $3,000 and interest, which is a lien on said premises, and which second party, by accepting this conveyance, agrees to assume and pay, and hold the party of the first part harmless therefrom; the same being a part of the purchase money."

Mrs. Hart had until this time been in possession of the mortgaged premises, and of the additional 40 acres deeded to West therewith, and West had not been in possession thereof or exercised any control over the same. Upon the giving of the deed by West to the defendant, Mrs. Hart surrendered possession of the mortgaged premises to defendant, who remained in possession thereof until the sale under the mortgage foreclosure. He paid the interest on the mortgage down to December 1, 1898. The interest was not paid in December, 1899, and then this action was commenced. The principal was not payable until December 1, 1904. At the time Mrs. Hart surrendered these premises to the defendant, she also surrendered to West the 40 acres covered by her deed to him, and he has retained possession thereof ever since. Mrs. Hart and her husband have gone away, no one knows where. The facts stated are not in dispute.

The trial court found some conclusions of fact, growing out of these conceded facts, to which the defendant takes exception: (1) That the deed from Mrs. Hart to West was never intended to, and did not, vest the ownership of the premises in West, but she all the while remained the owner thereof. (2) That Mrs. Hart contracted to sell the premises to the defendant for the sum of $3,500; he to pay $500 in cash, and assume and agree to pay the $3,000 mortgage. (3) That in pursuance of such contract, Mrs. Hart procured West to execute and deliver the deed to defendant, and that such execution and delivery were the act of Mrs. Hart.

Mrs. Hart, very likely, as between herself and West, did not intend to vest in him title to the premises, but she evidently did intend to vest title in him sufficiently to keep it away from her creditors; and when it came to his knowledge that the deed had been given and recorded, and he recognized the title in himself by giving the Butler mortgage, he accepted the deed, and could retain the title, and Mrs. Hart could not recover it back; the deed having been given to hinder, delay, and defraud her creditors. It could hardly be said, under these circumstances, that there was no intention to vest title, and that no title was vested in West, but remained all along in her.

There is no evidence showing that, prior to the giving of the deed by West to defendant, there was any contract made between Mrs. Hart and defendant, or that the giving of the deed was pursuant to any such contract. There was talk between Mr. Hart and defendant, and there were negotiations between them, but nothing amounting to a contract. The only contract made was that contained in the deed which was given by West and accepted by defendant.

Nor can it be said that the execution or delivery of the deed was the act of Mrs. Hart. It was, at most, his act performed at her request, the same as the giving of the Butler mortgage was. At the time both were given, West had the legal title to the premises, and Mrs. Hart had no interest therein, legal or equitable, which she could enforce. She was in no sense the owner of the premises. No interest of hers in the premises was deeded to the defendant by West, and therefore there was no consideration flowing from her to the defendant for the promise to pay the $3,000 mortgage. The interest conveyed to the defendant was the legal title held by West free from any outstanding equity in Mrs. Hart. The consideration for the promise was from West, and the promise was to him. The difficulty is that the promise to West did not inure to the benefit of plaintiff, because West was not liable to plaintiff for the mortgage debt. There is no doubt as to the general rule of law that an assumption clause in a deed like this does not render the grantee personally liable for the mortgage debt assumed, unless the grantor was himself so liable when the deed was given. An effort was made on the trial of this case to avoid this rule, and the trial court sustained the plaintiff's contention, and ordered judgment accordingly. We think the decision, upon the facts conceded or clearly established, and the deductions necessarily drawn therefrom, was erroneous; that the general rule above stated must be applied to this case, and defeats plaintiff's right to recover herein.

We conclude, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.