**In the Matter of DIAMOND REO TRUCKS, INC., Bankrupt.**

**Bankruptcy No. BG 74 1778 B 5.**

United States Bankruptcy Court, W. D. Michigan, S. D.

Aug. 20, 1979.

Barbara Rom of Hertzberg, Jacob & Weingarten, Detroit, Mich., for plaintiff Lloyd Kempf.

David G. Stoker, Livonia, Mich., for defendant.

## OPINION RE

### TRUSTEE'S OBJECTION TO INGHAM COUNTY'S TAX CLAIM

LAURENCE E. HOWARD, Bankruptcy Judge.

The trustee filed an objection to the claim of Ingham County for 1974 real estate taxes in the amount of $138,543.09 plus interest and penalties. The bankrupt occupied the property involved in accordance with a lease with E.I.C., Inc. dated December 28, 1972. Subsequently, E.I.C. conveyed the realty and lease to certain assignees. For the tax year of 1974, the party assessed and appearing on the assessment roll was White Motor Company. The lease provided that the bankrupt, as additional rent, would pay the real estate taxes. The property was sold to the State of Michigan for the delinquent 1974 taxes. The period to redeem from this sale has expired and the State is the owner of the property. The county has not taken any legal action to assert personal liability for the taxes against the former owners of the property.

E.I.C. has also filed a claim for the taxes, however this claim is not before the court for determination at this time.

Diamond Reo filed a Chapter XI proceedings on December 6, 1974, and continued to operate as a debtor in possession. It was subsequently adjudicated a bankrupt as of the close of the business on May 31, 1975. On October 15, 1975, an order was entered by this court, upon stipulation of the bankrupt and the owners of the property, providing that the bankrupt could occupy the premises for six months and would pay rent in the amount of $50,000.00 per month from June 1, 1975. The continued occupancy of the property was necessary because the personal property located therein had to be sold.

A hearing was held on the trustee's objection and both parties have submitted briefs.

■ Usually, incidents of state tax laws apply in bankruptcy proceedings, *United States v. State of Michigan*, 346 F.Supp. 1277 (1972).

■ In Michigan the owner may not be held personally responsible for taxes assessed against his real property. Taxes may be collected exclusively in the manner provided by law, that is, by distress on goods and chattels of the owner, and, if not so collected, by the sale of the real property assessed, M.S.A. § 7.83 [M.C.L.A. § 211.42], *Schaefer v. Woodmere Cemetery Assn.*, 256 Mich. 332, 239 N.W. 300 (1932), *United States v. State of Michigan*, supra, *Michigan Attorney General's Opinion*, 1929–1930, p. 426.

The tax day for the 1974 taxes was December 31, 1973, M.S.A. § 7.2 [M.C.L.A. § 211.2].

Taxes become "a debt due" from the owner or person otherwise assessed on the tax day, M.S.A. 7.81 [M.C.L.A. § 211.40].

However, in the *Michigan Attorney General's Opinion*, 1929–1930, supra, it was pointed out in reference to this section that tax is not a debt in the ordinary sense of the word and a tax collector may not pursue the owner or the person assessed personally for the debt.

M.S.A. § 7.3 [M.C.L.A. § 211.3] provides in part as follows:

". . . Real property shall be assessed in the township or place where situated, to the owner if known, and also to the occupant, if any; if the owner be not known and there be an occupant, then to such occupant, and either or both shall be liable for the taxes on said property, and if there be no owner or occupant known, then as unknown." . . .

M.S.A. § 7.24 [M.C.L.A. § 211.24] provides in part as follows:

". . . On or before the first Monday in March in each year, the supervisor or assessor shall make and complete an assessment roll, upon which he shall set down the name and address of every person liable to be taxed in his township or assessment district, with a full description of all the real property therein liable to be taxed. If the name of the owner or occupant of any such tract or parcel of real property is known, he shall enter the name and address of such owner or occupant as in this act provided, opposite to the description thereof; in all other cases the real property described upon such roll shall be assessed as 'owner unknown'. . . ."

In Callaghan's Michigan Civil Jurisprudence, the following comment is found in regards to the necessity of the above cited section:

"Then, on or before a statutorily designated annual date, he [the assessor] must make and complete an assessment roll, upon which he must set the name and address of every person liable to be taxed in his township or assessment district, with a full description of all the real property therein liable to be taxed. *It is important that these statutory provisions be observed*" Vol. 23, Taxes, Sec. 183, pp. 368–369. (Emphasis Supplied).

*In Fowler v. Campbell*, 100 Mich. 398, 59 N.W. 185 (1894), a decedent's estate was named on the tax assessment roll. However, probate of the estate had been completed and the property was assigned to the

heirs. The court held that there was no legal assessment and that the requisites of the statute must be strictly followed:

"Under this statute, it becomes important that supervisors shall observe the statutory provisions in making assessments. This statute provides that real property shall be assessed to the owner, if known; if not known, then to the occupant, if any; and, if there be no occupant, then as unknown. An executor, administrator, guardian, or trustee having control of real property may be treated as its owner for the purpose of assessment. Real property which belongs to a person deceased, not being in the control of an executor or administrator, may be assessed to his heirs or devisees jointly, without naming them, until they shall have given notice of their respective names to the supervisor, and of the division of the estate. The statute also makes it the duty of each supervisor, as soon as practicable after entering upon the duties of his office, to ascertain the taxable property of his township, and the persons to whom it should be assessed, and their residences. The supervisor, in the present case, not only neglected a plain duty,—for the names of the owners could have been easily ascertained by referring to the records of the probate court,—but he failed to assess the property in the way contemplated by the statute. In *Re Wiley* 89 Mich. 58, 50 N.W. 742, [the] petitioner was not the owner of the property at the time of the assessment, and it was there held that the term 'delinquent tax-payer' was intended to apply to persons against whom the tax was assessed, and whose names appeared upon the assessment roll." . . .

". . . The defects in the present case go to the entire tax, and the section referred to requires the tender of such taxes only as were legally assessed." Pp. 401–402, 59 N.W. p. 186.

The claimant cites *Blackwood v. Van Vleit*, 30 Mich. 118 (1874), in support of its right to receive payment for the taxes out of the estate. However, a close examination of that case clearly establishes that the obligation to pay taxes is based on the assessment:

"Where lands are occupied, our statutes have always required them to be assessed to the owner or occupant; and, where thus assessed, it becomes a duty which *the person assessed* owes to the state to make payment. If not occupied, the owner owes to the state a like duty . . ."

". . . The obligation to the state *was fixed by the assessment*, and if that depended upon possession, it must be a possession then or previously existing." . . . pp. 122–123. (Emphasis Supplied).

White Motor Company was assessed for the 1974 taxes. The bankrupt was not.

As is indicated above, the real estate was sold to the State of Michigan for the delinquent 1974 taxes. The period to redeem the sale has expired and the State became owner of the property.

M.S.A. § 7.112(1) [M.C.L.A. § 211.67a] provides in part as follows:

"All taxes and special assessments which are charged against or are liens upon said lands at the time the title becomes absolute in the state, . . . *shall be cancelled*, . . ." (Emphasis Supplied).

In commenting on the above statute the Michigan Supreme Court had the following thing to say in *Municipal Investors Ass'n v. City of Birmingham*, 298 Mich. 314, 299 N.W. 90 (1941):

"The clear import of the language of the foregoing amendatory enactments, and the obvious intent and purpose of the legislature to relieve owners from the weight of accumulated obligation, [*James A.] Welch [Co., Inc.] v. State Land Office Board*, 295 Mich. 85, 294 N.W. 377, must lead one to the conclusion that when title to the lots here in question became absolute in the State of Michigan upon expiration of the period of redemption provided by the tax law free of all taxes and

other liens and incumbrances of whatever kind or nature, future and deficiency as well as past assessments and taxes were cancelled. . . ." p. 325, 299 N.W. p. 94.

See also *Sonenklar v. Township Board of Farmington*, 25 Mich.App. 387, 181 N.W.2d 574 (1970), wherein the Michigan Court of Appeals held that an unpaid special assessment lien for a sewer and drain system was cancelled under the above section once title to the land became absolute in the state.

See also Callaghan's Mich. Civil Juris. Vol. 23, Taxes, Sec. 309, p. 555 and Sec. 310, p. 556.

The claimant has requested priority for the tax under Section 64(a)(4), 11 U.S.C., Sec. 104 of the Bankruptcy Act. This section provides priority to taxes due governmental units with certain restrictions,

"and provided further, that no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court:" . . .

The claimant contends, and I agree, that bankrupt's leasehold is an interest in property. See *State National Bank of El Paso v. United States*, 509 F.2d 832, (5th Cir. 1975) and *Freeman v. Dawson*, 110 U.S. 264, 4 S.Ct. 94, 28 L.Ed. 141 (1883).

The October 15, 1975, order of this court provided that the lease was rejected by operation of law under Section 70b, 11 U.S.C. Sec. 110, of the Bankruptcy Act. The order further provides that the bankrupt would pay the sum of $50,000.00 per month for rent. Unlike the lease of December 28, 1972, there was no provision for payment of current real estate taxes. The lease provides for payments of monthly rental of $53,750.00, and as additional rent, the bankrupt would pay the real estate taxes.

In Colliers on Bankruptcy the following reference is made to the above cited provision:

"Before 1926 the assets of bankrupt estates were often almost entirely depleted by the payment of overdue taxes on real property which had come into the hands of the trustee—in spite of the fact that such property was often thereafter abandoned to mortgagees or the taxing authorities—since such taxes were construed, under many state statutes, to be taxes legally due and owing by the bankrupt personally although they may have been also liens on the real estate. The injustice of such payments at the expense of general creditors for the benefit of mortgagees or purchasers at tax sales was patent, since the payment of taxes from the bankrupt estate cleared away tax claims which otherwise would have remained charges on the real estate in their hands and thus such payment inured solely to their benefit. After 1926 Amendment, *a trustee could by the process of abandonment of heavily incumbered real estate reduce the taxable interest of the bankrupt's estate to zero. . . .*"

"A further question has also arisen as to whether the proviso, which reads literally 'no order shall be made' forbids the payment of taxes included therein altogether, or whether it merely denies them priority, permitting them to be claimed as debts on a parity with those of general creditors. The almost unanimous view has been that payment should be refused on any basis. . . ." See *Colliers on Bankruptcy*, 14th Ed., Vol. 3a, pp. 2195–2916 and 2201. (Emphasis Supplied).

The lease has been abandoned. The court entered an order pursuant to stipulation providing for payment of rent $3,750.00 per month less what was being paid prior to bankruptcy. It is clear that "the value of the interest in the bankrupt estate" in the lease is zero.

I would tend to agree with the last cited provision of Colliers. However, that question need not be decided here because by transfer of the deed to the State of Michigan, and the expiration of the redemption period, there is no existing debt to support any claim.

The main thrust of the claimant's argument is premised on the fact that the lease provided that as part of the rent the bankrupt would pay the real estate taxes. Claimant says it is a third party beneficiary of the contract and entitled to the fruits of the promise between the bankrupt and E.I.C., Inc.

M.S.A. § 27A.1405 [M.C.L.A. § 600.1405] provides in part:

"Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) · . . . A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

(2)(a) . . . The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary . . ."

The claimant relies heavily on the case *Goode v. Ruehle*, 23 Mich. 30 (1871), for the proposition that the City of Detroit can sue for taxes that the lessee agreed to pay in accordance with the lease. However, the holding of the *Goode* case was that the sale of the lessee's leasehold interest by the city satisfied the tax owed to the lessor and he had no standing to claim a breach of lease and request ejectment of the lessee. The court did not make any ruling on validity of the tax sale.

It should also be pointed out that M.S.A. § 7.112(1) [M.C.L.A. § 211.67a] was enacted in 1937, a considerable period after the *Goode* case was decided, and the statute provides that taxes are cancelled after the property has been sold to the state and the period of redemption has expired.

*Guardian Depositors Corp. v. Brown*, 290 Mich. 433, 287 N.W. 798 (1939) stands for the proposition that under M.S.A. § 27A.1405 [M.C.L.A. § 600.1405] the mortgagee can proceed against the grantee of real estate who assumed the mortgage.

The trustee has cited numerous cases in other states which provide that in mortgage assumption situations the promissor is not liable to a third party beneficiary where the primary obligator (promisee) is no longer liable on the obligation. See *Wood v. Johnson*, 117 Minn. 267, 135 N.W. 746 (1912), *Brown v. Stillman*, 43 Minn. 126, 45 N.W. 2 (1890), *Wilbur v. Warren*, 104 N.Y. 192, 10 N.E. 263 (1887), *Williams v. Van Gieson*, 76 App.Div. 592, 79 N.Y.S. 95 (1902).

■ As indicated above in Michigan there is no personal liability for taxes, the bankrupt was not assessed, the value of its interest in the lease is zero, and, finally and most importantly, the taxes were cancelled by sale to the state and expiration of the redemption period. Therefore, in our factual situation there is no obligation owing by the bankrupt which the claimant as a third party beneficiary can collect.