der investigation, was written. That such letter was a gross violation of Masonic obligation, Masonic conduct, and Masonic law there can be no question. If I am correct in the views I have stated above, his trial was strictly in accordance with the rules of procedure established by the order, and his appeal to the commission of appeals, and the affirmance of its judgment by the grand lodge, were within the jurisdiction conferred by the rules of the order. There is no ground that I can discover upon which a court of equity should interfere to prevent the carrying out of the sentence as finally confirmed by the grand lodge.

The complaint will be dismissed upon the merits.

In re WARNER.

(Supreme Court, Appellate Division, Fourth Department. July 24, 1900.)

1. APPEAL—SURROGATE'S DECREE—FINDING OF FACTS—REVIEW.
   Under Code Civ. Proc. § 2586, providing that on an appeal, on the facts, from a surrogate's decree, the appellate court has the same power to decide questions of fact as the surrogate had, the appellate court on such appeal is not limited to an inquiry as to the sufficiency of the evidence to support the decree, but is to determine for itself whether the surrogate correctly found the facts.

2. EXECUTORS AND ADMINISTRATORS—CLAIMS.
   Deceased's note, payable to his wife, dated prior to his will, which made adequate provision for her, was found after his death in an unused safe, containing only receipted bills and old letters, belonging to both him and his wife, while another safe was kept, in which were valuable papers. The wife's means were insufficient for her to have loaned deceased the amount of the note, and there was no evidence of delivery of the note to her, or of payment thereon, except an indorsement, in deceased's handwriting, that interest had been paid up to a certain date. *Held*, that such note was not an existing indebtedness against deceased's estate.

3. WILLS—CONSTRUCTION.
   Testator gave his wife the use and income of all his property during her lifetime, with power to sell and convey the same and to give away a certain amount if she chose, the same as if the property was her own. *Held*, that the wife could dispose of such amount by will, as well as by gift during her lifetime.

4. SAME—WIDOW'S EXEMPTIONS—SETTING ASIDE.
   A widow, who is sole executrix of her husband's estate, with a life interest therein, is entitled to have the exemptions allowed her by Code Civ. Proc. § 2713, set off on the judicial settlement of her accounts.

Appeal from surrogate's court, Steuben county.

Judicial accounting by Seth L. Warner and James B. Stratton, as administrators with the will annexed of Hiram W. Brundage, deceased. From an adverse decree, the administrators appeal. Modified.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Ruben R. Lyon and George T. Spencer, for appellants.
John F. Parkhurst, for respondents.

WILLIAMS, J. The parties are the personal representatives of the respective estates of the Brundages, who were husband and wife.

The deceased left no children, but left brothers and sisters, respectively, who are interested in their estates under their wills. The husband died January 26, 1896, leaving a will under which his wife was sole executrix. She had charge of her husband's estate, as such executrix, until October 16, 1896, when she died. The decree appealed from was made upon a judicial settlement by the wife's executors as to her administration of her husband's estate, as executrix. Three questions are raised by this appeal, viz.: (1) As to the allowance to the wife's estate of $5,539.91 for principal and interest of a note for $3,500 made by the husband, payable to the wife, bearing date August 1, 1884. (2) As to the allowance to the wife's estate of $1,695.50, for $1,500, which the husband, by his will, allowed his wife to dispose of as her own property, and interest thereon. (3) As to the allowance to the wife's estate of $150, balance of exemption to her as widow.

1. As to the $3,500 note, it is claimed by the appellants that the evidence did not authorize the finding that the note was ever delivered to the wife, or that there was any consideration therefor, or that it was an existing indebtedness at the time the husband died. Counsel for the respective parties have, in their points, discussed the evidence bearing upon the allowance of the amount of this note as an indebtedness, in great detail. We have examined the record carefully, and have considered the arguments of counsel. We do not regard it as necessary to go over the whole ground and refer to the evidence in detail, but prefer, rather, to state the conclusions we have arrived at, and some of the reasons leading to such conclusions. It will be remembered that under section 2,586 of the Code of Civil Procedure this court is vested with the same power to decide questions of fact which the surrogate had. Its duty is not limited to the question whether there was sufficient evidence to support the decision of the surrogate, but it should determine for itself whether the surrogate correctly determined the facts. In re Rogers, 10 App. Div. 594, 42 N. Y. Supp. 133. These people were married December 25, 1876. The husband was then 32 years of age, and the wife 26 years old. He was then living on his father's farm, and she had been for some years teaching school. They lived on a farm until 1881, and then moved into the village of Bath, where they lived until their deaths. He went into the grocery business in 1882, in partnership with one Lewis. In October, 1884, he purchased Lewis' interest in the business, and continued it alone until January, 1893, when he retired permanently from business. During his lifetime he accumulated quite a considerable property,—upwards of $20,000. He was a close, careful business man, and his wife assisted him in his business. She had a few hundred dollars at the time of their marriage, and received some $500 from her mother's estate, and when she died had some $1,500 or $2,000 of her own property, aside from this $3,500 note made by her husband. It is impossible that she could have had any money to loan her husband, for which he gave her this note. If he ever gave it to her at all, it must have been a gift, intended as a provision for her after his death. It was dated August 1, 1884,—a few months before he purchased Lewis' interest in the grocery business, in October, 1884. So far as

appears, he then had no will; and it may be fairly inferred .that he made the note for the purpose indicated,—as a provision for his wife out of his property. Whether he delivered the note to his wife, we cannot tell. April 1, 1890, the note was nearly six years old. It was payable one day after date, and was upon interest, and it would have been barred by the statute of limitations soon. On the 1st of April, 1890, he indorsed upon it, "Interest paid to date." That renewed the note, and avoided the statute of limitations. He may have regarded that as a proper thing to do, whether he had actually delivered it to his wife, or had kept it in his own possession. Whether he really paid the interest to his wife for the six years, may well be doubted. The amount of interest at 6 per cent. would have been $210, and, if the note was intended as a provision for his wife after his death, he may not have cared to have too much interest unpaid upon it when he died. One year later, April 27, 1891, he made the will, which continued until his death, in January, 1896. This will was a very adequate provision for his wife after he should die, and it was no longer necessary to keep the note in existence for that purpose. His wife had some little property herself, and by his will he gave her the use and income of all his property during her life, with full power and authority to sell and convey the same, and give good and sufficient conveyance thereof, and power to carry on any business he should be engaged in at his death, and to buy and to sell, and to give away not exceeding $1,500, if she chose, the same as if the property were her own, and provided that in respect to the management thereof she should not be accountable to any one, nor be compelled to file an inventory or to give a bond; and he made her his sole executrix. The only other provision of the will was that should any of the property which she received from him, or the avails of any such property, remain, he gave it to his brothers and sisters living at her death. This was a very favorable will for the wife, and, considering the amount of his property (over $20,000), and that he knew all the time, until he died, that this will was in existence, it is reasonable to suppose that he no longer, after this will was made, regarded the note as an existing indebtedness, to be paid from his estate after his death. Nothing was heard of the note before his death, and after his death it was found in an old, unused safe, that he had abandoned (except as a waste receptacle for old letters and paid and receipted bills of him and his wife) from the year 1893, when he went out of business. He then purchased a new safe, in which he and his wife apparently kept all their papers which they regarded as valuable. The note, in this receptacle, could no more be regarded as in the wife's possession than in her husband's. It was among old papers belonging, some to the one, and some to the other. There is nothing in the evidence to indicate that the wife ever knew or heard of the note before her husband's death, unless we may presume she knew about all his provisions for her, the note, and the will; and even then we can hardly suppose that, after she knew of the will, she regarded the note as any longer a provision for her benefit. The transaction testified to by her brother, of the finding of the note and the delivery thereof to her, tended to show either that she had no knowledge of the note before that time,

or else regarded it as abandoned and valueless. When her brother called her attention to it and told her to keep it, she made no reply whatever,—said nothing about it. She in no way indicated that she knew about it or regarded it as belonging to her. She gave no explanation of how it came to be in the old, unused safe, among old letters and receipted bills of her own and her husband's, or why she had not kept it in the new safe, with her other valuable papers. We cannot say that the note was ever actually delivered to the wife, or that she ever had possession of it or ever received any payment upon it; and it is very evident that the note was not considered, for some reason, as an existing debt against the husband's estate at the time of his death. To regard it as such is against all the probabilities arising from the evidence and the circumstances developed thereby. We think this allowance to the wife's estate should not have been made by the surrogate.

2. As to the $1,500 which the husband by his will allowed the wife to dispose of, the language of the will is: "I give her power * * * to give away not exceeding $1,500, if she chooses, the same as if the property were her own." The other provisions of the will have been referred to in general terms above. It will be observed that she was not limited in any way as to the time or manner of the gift. The husband was not careful to hedge her about, in any of the provisions for her benefit. She was given the use of all his property, with power to sell and convey it, to carry on business, and to buy and sell, and was not to be accountable to any one in respect to the management of the property, and was not to be compelled to file any inventory or give any bond as executrix. And, in the same liberal way, she was allowed "to give away not to exceed $1,500, the same as if the property was her own." If her own, she could make a present gift, or one by will, to take effect at her death. We see no reason for the claim that the power to make the gift was confined to her lifetime, and that she could not give it away in and by her last will and testament. The words here used, "the same as if the property were her own," are not found in any cases referred to by counsel,—are new,—and we feel at liberty to give a construction to the provision that enabled her to dispose of the $1,500 by her will. That she did dispose of this amount by the will she left, made after her husband's death, we cannot doubt. She stated therein distinctly that she accepted all the provisions in her husband's will for her benefit, and made her own will, and gave the legacies therein, having in view such provisions in her husband's will, and making the legacies payable as well from the property left by her husband to her, as from her own property. We conclude that the surrogate correctly determined this question.

3. As to the $150, balance of exemption to the widow allowed to her estate, the provision for setting off the exemption to widows is contained in section 2713 of the Code of Civil Procedure, and is to be done in the inventory. By the terms of the will, the widow, who was made sole executrix, could not be compelled to file any inventory, and none was made or filed, and the exemptions were not, therefore, set off to her under section 2724, Id. The surrogate, by the decree made in the judicial settlement of the accounts of the executrix, was empowered to

65 N.Y.S.—65

make the allowance for the exemption, and he did so by the decree appealed from. It was an allowance of what the widow was entitled to during her lifetime, and which belonged to her estate after her death. She, being the sole executrix, could hardly set off the amount to herself as widow, or pay herself out of the funds of the estate. The proper time to adjust the matter was on the judicial settlement of her accounts as executrix. We conclude that the surrogate correctly determined this question.

The views here expressed lead us to determine that decree appealed from should be modified so as to disallow the claim of respondents upon the $3,500 note, and, as modified, should be affirmed, without costs of this appeal to either party against the other. So ordered. All concur.