(96 App. Div. 517.)

HETZEL v. EASTERLY et al.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1904.)

1. EXECUTORS AND ADMINISTRATORS—DUTIES—DISCHARGE OF LIENS.

Where mortgages on the property of a decedent are valid and enforceable liens, and the property covered thereby is worth much more than the amount due on the mortgages, it is the duty of the executors, when foreclosure is threatened, to preserve the estate from waste and destruction by paying off and discharging such liens.

2. SAME—DUTY TO DISCHARGE MORTGAGES—ATTEMPTED ASSIGNMENT—VALIDITY.

Where executors are required by the will to pay a mortgage indebtedness, and funds are set apart from the estate with which to pay and discharge such indebtedness, it is their duty to pay such indebtedness, and their act in so doing cannot operate otherwise than as a payment and discharge of the mortgage, though they intend that it shall not so operate, and endeavor to preserve the lien by executing formal instruments of assignment.

3. SAME.

The fact that money especially dedicated by testator to the payment of an indebtedness secured by mortgage on property worth much more than the amount of the indebtedness is also applicable to the payment of other debts of testator does not affect the duty of the executor to discharge the mortgage, nor make it his duty to take it up by assignment to the estate, so as to be used as an asset in the payment of debts, as the unsecured debts would get the benefit of the payment of the mortgages through increase in the amount of unincumbered real estate belonging to the estate and subject to the payment of such debts.

4. SAME—ASSIGNMENT OF MORTGAGES—TITLE OF ASSIGNEE—NOTICE OF DEFECTS.

Where a will appropriated a fund for the payment of a certain mortgage indebtedness, and the executor paid the indebtedness, but, instead of taking a discharge, attempted to preserve the lien of the mortgage by taking an assignment thereof, a subsequent assignee of the mortgage was by the record of those facts charged with notice of the defect in his assignor's title, and occupied no better position than his assignor.

5. SAME—SETTLEMENT OF ACCOUNTS—CONCLUSIVENESS.

Where the account filed by an executor for settlement, on which citation issued to defendants, who were nonresidents and did not appear, contained no reference to a purported transfer of a mortgage against the estate, which had in fact previously been paid and discharged, and the matters pertaining to this transfer were brought before the surrogate on a new affidavit or petition, filed subsequently to defendants' default, of which they had no notice, and to which they were not made parties, a decree of the surrogate purporting to approve the acts of the executor in purchasing and transferring the mortgage, instead of paying it, was, as to defendants, ex parte, and not a binding adjudication upon them.

6. WITNESSES—IMPEACHMENT BY PARTY.

While a party calling a witness may not directly impeach him, yet, where the witness called is hostile, the party calling him may show the actual facts by other witnesses, though they contradict the hostile witness.

7. MORTGAGES—TRANSFER—CONSIDERATION—EVIDENCE.

In a suit to foreclose a mortgage, evidence held to support a finding that the note, in payment of which the mortgage was transferred to plaintiff, was originally given in lieu of a testamentary provision for testator's widow, for whom ample provision had been subsequently made by will, and was not a valid obligation against testator's estate.

8. DECEDENTS' ESTATES—PAYMENT OF DEBTS—MORTGAGES—FUND APPLICABLE.

Where a mortgage was given by testator upon land which he during his

lifetime gave to his widow without any valuable consideration, the land covered by the mortgage was the primary fund out of which it should be paid, and the widow, as executrix, could not in the first instance pay it off from the general property of the estate.

9. EVIDENCE—EXAMINATIONS BEFORE TRIAL—OBJECTIONS—WAIVER.

Objections to the reception in evidence of the examination of a witness before trial, on the ground that it covered incompetent matters and that opportunity should have been given upon such examination for cross-examination, and that it was offered as a whole, instead of being read by question and answer, are waived when not seasonably taken upon the trial.

10. DEPOSITIONS—READING ON TRIAL—ADVERSE PARTIES—WHO ARE.

In a suit to foreclose a mortgage, a defendant who assigned and guarantied the note in purported payment of which the mortgage was transferred to plaintiff, and whose actual interests were otherwise hostile to her co-defendants, and whose attitude in the suit was in accord with that occupied by plaintiff, was an adverse party as to her codefendants, within the meaning of Code Civ. Proc. § 882, providing that a deposition taken before trial, "except in the case of an adverse party," shall not be read unless it appears that the party examined has died or is unable to attend, etc.

11. APPEAL—HARMLESS ERROR—READING OF DEPOSITIONS.

The improper reception in evidence of a deposition of an adverse party, who was herself called and examined as a witness upon the trial, and testified to the same facts that appeared in the deposition, was not prejudicial to her or to those associated in interest with her.

12. SAME—AMENDMENTS TO PLEADINGS—WAIVER OF OBJECTIONS.

An objection to the allowance of an amendment to the answer, on the ground that it was unfair and disadvantageous to plaintiff to have such an amendment made late in the trial, could not be urged on appeal, where no such objection was urged when the amendment was made.

13. TRIAL—MOTIONS TO STRIKE—DISCRETION OF COURT.

A motion to strike out as inadmissible evidence which has already been offered and received without objection is addressed to the discretion of the court, and its refusal is not ground for reversal, though the evidence was inadmissible as against a timely objection.

14. EVIDENCE — ERRONEOUS ADMISSION — FAILURE TO OBJECT — AMENDMENT OF PLEADINGS—CURE OF ERRORS.

The rule that error in the admission of evidence, objected to as inadmissible under the pleadings, cannot be cured by a subsequent amendment of the pleadings to conform to the proofs, cannot be invoked where the evidence was not objected to as inadmissible.

Appeal from Special Term, Cayuga County.

Action by Joseph Hetzel against Eliza H. Easterly, impleaded with Jay M. Easterly and others. From a judgment dismissing plaintiff's complaint, plaintiff and defendant Eliza H. Easterly appeal; and from an order granting defendants Jay M. Easterly and others an additional allowance of costs the plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

W. B. Baker, for appellant Hetzel.
John D. Teller, for appellant Eliza H. Easterly.
Frederic E. Storke, for respondents.

HISCOCK, J. The controversies presented to us upon these appeals arise in a general way out of and in connection with the settlement and disposition of the estate of one John M. Easterly, deceased.

This action was brought to foreclose a mortgage given by said Easterly and his wife, the defendant Eliza H. Easterly, upon real estate situate in the city of Auburn, to one Joseph Hadden, to secure a bond conditioned for the payment of $2,500, and which bond and mortgage are claimed by the plaintiff to have been assigned to him. The same parties executed another mortgage upon the same or neighboring lands to the same mortgagee to secure a bond conditioned for the payment of the sum of $2,000, and which instruments plaintiff also claims were assigned to him, and for the foreclosure of which mortgage a second action was brought. The issues involved in this action in their general nature included and covered those involved in the second action, and the two were tried and upon this appeal have been argued together.

In stating the reasons which lead us to the conclusion that the judgment herein appealed from should be affirmed, our discussion will naturally and most conveniently treat together the facts and issues of both actions. The mortgage for $2,500 was executed August 8, 1881, and the one for $2,000 April 13, 1882. The mortgagor, John M. Easterly, who owned the real estate, and who was the obligor upon the bonds, died in 1895. He left a last will and testament, which was promptly thereafter admitted to probate, and by which he provided, among other things, that his widow, Eliza H. Easterly, should have the benefit during life of certain property, including the real estate in question, and that upon her death the same should pass in remainder to, among others, certain nephews and nieces, who are defendants and respondents here. Said will also expressly and specifically gave to his executors the proceeds of a certain policy of insurance for $5,000 and the proceeds of two distinct pieces of land to be sold, in trust and as a fund to be used in paying off and relieving his real estate from certain liens, which concededly included the mortgages of which foreclosure is now being sought. He appointed as executor his wife, the defendant Lamoree, who is her brother-in-law, and one Reed, who thereafter accounted and was discharged. Not long after testator's death, for some reason which is not at all clear, the mortgagee, Hadden, is said to have insisted upon payment of his mortgages, and to have threatened foreclosure in case the same was not made. Thereupon the executors, out of the funds in their hands expressly dedicated to that purpose, paid to Hadden the amount due upon his two mortgages; but, instead of treating such transaction as a payment and satisfaction of them, they went through the form of taking an assignment thereof to themselves, and now swear to their mental operations which intended a preservation of said mortgages and liens. Thereafter said executors as a second transaction went through the form of assigning said bonds and mortgages to the plaintiff, who was a brother of the defendant widow. The $2,500 bond and mortgage were concededly transferred in part payment of a note for $3,000, alleged to have been given by the testator some time before death to his wife, and by her to have been transferred to plaintiff. The $2,000 bond and mortgage were in form sold and assigned to plaintiff as a means of raising money to enable the executors to pay to Mrs. Easterly a note amounting to upwards of $800 held against her husband's estate, and also to pay off a certain bond and

mortgage for $1,500 upon land of which her husband had made to her a gift during his life.

Various defenses are urged to the enforcement of these mortgages. It is claimed that by the transaction between the executors and the original mortgagee, Hadden, the same were absolutely paid and discharged, and could not thereafter be enforced or assigned by the executors. In the case of the $2,500 mortgage, it is further insisted that the $3,000 note, in alleged payment of which it was transferred to plaintiff, was not a valid obligation in the hands of the widow against her husband's estate, and that no valuable consideration was received by her upon its transfer to plaintiff. In the case of the $2,000 mortgage it. is claimed by defendants that the executors received no valuable consideration upon the transfer thereof to plaintiff; also that the $1,500 mortgage, which they desired to pay with proceeds derived from its. sale, is primarily payable out of the land upon which it is a lien, and should not be paid by the executors out of the other estate of the testator. And, finally and generally, it is urged that the widow, her co-executor and brother-in-law, Lamoree, and her brother, the plaintiff, entered into a general conspiracy to procure a transfer of the mortgages in suit to the last person who should utilize them for the two-fold purpose of procuring payment for the benefit of the widow of the $3,000 note and the $1,500 mortgage referred to, and which were not valid claims, and also of procuring the absorption by or for the benefit of said widow, as against the remaindermen, of the land covered by said two mortgages, which was worth much more than the amount thereof. We shall discuss the defenses thus urged, and upon which the learned trial justice, after the manifest application of very careful consideration, has found in favor of the defendants urging them.

We feel clear that the transaction between the executors and Hadden resulted in such a payment, satisfaction, and discharge of the mortgages that the same were not thereafter valid liens, enforceable either by the executors or by their assignee, the plaintiff. No doubt is anywhere raised that the mortgages in Hadden's hands were valid and enforceable liens, or that the real estate covered thereby was worth much more than the amount due thereon. Under such circumstances, upon general principles, it became the duty of the executors, when foreclosure was threatened, to preserve the estate from waste and destruction by paying off and discharging such liens. In addition to the duty thus generally imposed upon them, the will of their testator had expressly and specifically placed this obligation upon them, and had put in their hands a fund more than sufficient to discharge said and any other liens upon his real estate. Nobody disputes that it was their duty to take the money in their hands and pay to the mortgagee the amount due upon his mortgages. The only question arises on the attempt of the executors, upon so doing, to take an assignment of and preserve the liens of said mortgages. In discussing the question thus presented, it is to be borne in mind that the bonds were the direct personal obligations of their testator, and the mortgages were liens upon his real estate. His estate was directly and primarily liable for their payment. There was no element in favor of his estate, or the executors representing it,

of a suretyship or secondary liability for some third party, who was primarily liable.

The executors were required by the authority which created them to pay this indebtedness, and were provided out of the estate with funds with which to pay and discharge it. Under such circumstances, it seems to us to be plain and elementary that those who paid the mortgages were the ones bound so to do, and that their act could not operate otherwise than as a payment and discharge of the liens, no matter how much with mental intentions and formal instruments of assignment they labored to make it otherwise. Thomas on Mortgages (2d Ed.) § 363. We shall test the theory that these mortgages were assigned and transferred to the executors and maintained as valid and enforceable liens by extending the same to practical details. If the executors, upon payment to Hadden, obtained valid transfers of the mortgages, and continued them in life as binding obligations, so that they could be assigned and transferred to plaintiff and these actions of foreclosure maintained, the executors themselves would have been entitled to enforce and foreclose the mortgages. We should then have it that the executors, having taken funds of the estate with which to take up liens and mortgages upon it, could thereafter foreclose said mortgages upon property for the sake of securing back for the benefit of the estate repayment of the moneys which they had in the first instance used to take up said liens and mortgages in order to protect the estate. It seems to us that the bare statement of the results which would thus follow shows the absurdity of plaintiff's theory, and that it leads its advocate in a perfectly circuitous and circular route around to the point from which he started and never can lead to any lawful, legal, or beneficial end.

Plaintiff and the executors have attempted to fortify their doctrine by the suggestion that the moneys especially dedicated by the testator to the payment of these liens were also applicable to the payment of other debts, and that, as all of the debts might exceed the amount of said funds, it was the duty of the executors not to pay and satisfy these mortgages, but to take them up by assignment to the estate, so that they might be used as an asset in payment of debts. Again, it is to be borne in mind that there has been no question but that the property covered by these mortgages was worth three or four times the amount thereof. Under those circumstances there could be no doubt about the duty of the executors to pay and discharge the liens and preserve the property of the estate. There was no way in which the valuable real estate of the testator could be relieved from the lien of these mortgages for the benefit of his estate, except by payment thereof. There was no process of legerdemain worked out in assignments and transfers of the mortgages which would either take the place of actual payment or get rid of them. If, by using personal estate of the testator to pay them, there should be a deficiency of funds applicable to other and unsecured debts, such latter debts would get the benefit of the payment of the mortgages through increase in the amount of unincumbered real estate belonging to the estate, and against which their payment might be enforced by proper proceedings in Surrogate's Court. Again, it seems to us that the executors' theory of taking an assignment of

these mortgages to the estate as assets which might be used in payment of other debts against the same leads to incongruous results, which are fully and plainly exemplified in the actions now pending before us. The executors realized the necessity of paying the mortgages in order to prevent foreclosure and sale and sacrifice of real estate. They went through this form of gathering them in as assets which might be used to pay other debts. This resulted in the transfer of them to plaintiff to secure the payment of debts, which not only were unsecured, but are alleged to have been spurious and counterfeit, and plaintiff is now seeking to foreclose said mortgages and attain the very result against which the executors say they were in the first instance seeking to guard while Hadden had them.

Plaintiff occupies no better position as assignee of the mortgages than did the executors. Aside from those general principles which charge an assignee of such a chose in action, even without notice, with defects and defenses in and against the same while in the hands of his assignor, the plaintiff in this case is to be charged with notice and knowledge of the defense which we have just discussed. Aside from any personal knowledge which he may have had of what was being attempted, the record title of the mortgages gave him what was actual or constructive notice and information of the entire situation. The record showed him that he was taking an assignment from executors who, necessarily acting in behalf of the estate, had paid them and taken transfers of liens upon and obligations against the estate which they represented. The bonds and mortgages showed upon their face that they were the primary, direct obligations of the testator, and the will which created the executors gave notice of the unusually specific and careful bequest to said executors of funds to be used in paying these liens. We think, therefore, that upon neither legal nor equitable grounds is plaintiff to be exempted from any weaknesses which surrounded and affected the title of his assignors.

It is, however, insisted by plaintiff and the executors that, upon a settlement of the accounts of the latter, a decree was made and entered in Surrogate's Court which adjudicates in a manner binding upon respondents, in effect, that the executors did take an assignment of the mortgages in question and that they might be transferred, the one to pay the $3,000 note already mentioned, and the other with which to secure moneys to pay the other claims referred to. We think, however, that this contention ought not to prevail, and that it would be exceedingly inequitable if it did. The executors filed an account and procured citations to be issued out of Surrogate's Court for the settlement thereof. We are unable to find in the record a copy of the citation thus issued, but assume that it was in the ordinary form. The respondents, who were nonresidents of the state, did not appear. The record in Mrs. Easterly's letters to some of them suggests why they did not. Said account as originally filed contained no reference to the purported assignment to the executors of these mortgages. It contained no intelligible reference to the proposed use through subsequent transfer by the executors of them for the purpose of paying up claims originally held or urged in behalf of the widow. There was no suggestion anywhere in the account, or, as we must assume, in the citation,

that the Surrogate's Court upon such settlement would be called upon to pass upon the legal effect of the acts of the executors when they paid to Mr. Hadden the moneys due upon his mortgages. After the other heirs had made default in their appearing, and after the proceedings of the accounting had been adjourned once or twice, the executor, Mr. Lamoree, made an affidavit, which was attached to the account some time theretofore filed, and which affidavit purported to set out in substance what had taken place with reference to the assignment to the executors of the mortgages, and that one of them had already been transferred to plaintiff in payment of the $3,000 note. Upon this affidavit or petition, whatever it might be called, the Surrogate did incorporate in his decree settling the accounts of the executors certain provisions in effect purporting to approve the acts of the executors in purchasing from Hadden said two bonds and mortgages, "and in thereafter holding and treating and using them as assets of the estate of John M. Easterly, deceased, and in so assigning said larger bond, and in assigning said mortgage for $2,500 and interest,. * * * to said Hetzel in payment of his unsecured claim," and also ordering "that the executors provide for the payment * * * of any other estate debt or debts * * * by making sale of said $2,000 bond and mortgage accompanying the same." This decree was made and entered after the transaction between the executors and Hadden had taken place, and after said mortgages had been absolutely paid and discharged, if said transaction did operate as such payment and discharge. If the mortgages by the payment by the executors had been canceled, and their lien and validity destroyed, this decree, if it amounted to anything, operated as a revival and resurrection of instruments already canceled and dead. We do not think that the Surrogate's Court in said proceeding had jurisdiction to accomplish any such result in any way which would be a binding adjudication upon these respondents. It was not so necessarily and naturally incident to the accounting which defendants were cited to attend that they should have assumed the possibility of any such proceedings. It does not seem to us that it was one of the issues or questions which the Surrogate was called upon or authorized to decide.

But outside of this, the account as originally filed, and to the settlement of which defendants were cited, did not present any facts or foundation upon which the Surrogate might make any such decree. Long after the account had been filed and the defendants had become in default, an entirely new affidavit or petition was prepared and presented to the Surrogate, upon which the provisions in question were inserted in the decree. We think that such affidavit or petition instituted entirely new and supplementary proceedings, of which the defendants never had notice, and to which they were never parties, and that that portion of the decree entered thereupon was entirely ex parte so far as they are concerned, and in no wise an adjudication or binding upon them, as it ought not to be under the circumstances. The learned trial justice found explicitly that the $3,000 note, in purported payment of which the $2,500 mortgage was transferred to plaintiff, was not a valid obligation in the hands of the original holder thereof, Mrs. Easterly, and that plaintiff paid nothing therefor; and

we think that these findings of fact were justified by the evidence. The respondents examined Mrs. Easterly before trial, and used her deposition upon the trial. She gave some evidence to indicate that this note was a valid obligation and that her brother did pay her value therefor. The appellants, especially the plaintiff, urge in effect that this evidence was binding and conclusive, and that respondents could not impeach their own witness and thereby establish the invalidity of this obligation; for, concededly, if the note was without consideration or validity in the hands of the plaintiff, the action to foreclose the mortgage cannot succeed. We recognize, of course, the elementary rule that a party calling a witness may not then directly impeach him. It is, however, equally well settled that a party calling a hostile witness, as Mrs. Easterly was, is not prevented by the statements and evidence of such witness from showing the truth and actual facts by other witnesses, even though the latter contradict the former. We think that that is what has occurred in this case; that, while Mrs. Easterly in an uncertain and unsatisfactory way did swear to things which, if true, would establish the validity of plaintiff's note, there was other evidence and there were other circumstances which presented such an issue of fact as authorized the trial justice to find as he has.

The note in question was dated May 30, 1879. It is alleged to have been given for borrowed money; but, in opposition to this theory, although not payable until the indefinite period of one year after the maker's death, it is entirely without interest. The evidence of the payments by the wife to her husband, which constituted the loans claimed to have been repaid by this note, is uncertain and indefinite as to amounts and dates. No vouchers or independent testimony was produced to substantiate the claim that said payments were ever made. The widow upon the stand repeatedly refused to produce original memoranda said to be in existence, and which, if as claimed, would have corroborated her story. Although the testator kept very complete books of account, there was no reference anywhere to this alleged outstanding indebtedness, which was large and important in proportion to his estate. The widow herself, at various times when it would have been natural to refer to a valid indebtedness of this size against her husband's estate, failed to do so. The testator made his will only a few months before he died. In that will, as already stated, he appropriated the proceeds of a life insurance policy and of certain real estate to the payment of all of his debts. It is perfectly manifest from a perusal of the will that he expected that the funds thus produced would be sufficient to pay off such debts, and as matter of fact they were sufficient, almost to a dollar, to pay all of the same, except for the $3,000 note and the $1,500 mortgage which are being pressed for payment against his estate by the plaintiff for the benefit, as claimed, of the widow.

The conclusion reached by the trial court that this note was originally given as, or in lieu of, a testamentary provision, seems quite reasonable. By the stub and recitals in it the testator evidently intended to secure his wife in its enforcement. Subsequently, however, two wills and the deed to Mrs. Easterly were executed, whereby ample

provision was made for the widow, which manifestly contemplated as
no part of its scheme this alleged liability.   In some respects the case
presents features similar to those arising in the case of In re Warner
(Sup.) 65 N. Y. Supp. 1022, where this court, upon a review and de-
termination of the facts, found against a claim made upon a note by
the wife against her husband's estate.

Coming to the alleged consideration paid by plaintiff for the note,
it appeared that he, as representative of another estate, had paid to
the widow in various sums almost the exact amount which it is now
claimed was paid by him for the transfer of this note.   Plaintiff upon
the trial seemed to accept the burden and responsibility of establishing
the validity of the transactions attending the assignment of these mort-
gages as claimed by him.   He, as well as other witnesses, were sworn
to sustain them; but his evidence, when read as a whole, seems to
show a considerable indefiniteness and unsatisfactory explanation
of those transactions.   He failed to produce upon the trial any vouchers
or corroborating evidence of the payments claimed to have been made
by him to his sister for the note, or to the executors upon the assign-
ment of the other mortgage.   There are various other circumstances
and facts which might be referred to.   In addition to all of this, the
learned trial justice had the advantage of seeing upon the stand the
various parties and witnesses, and we have no disposition to interfere
with his finding against the validity of the note in plaintiff's hands.

In addition to finding that the plaintiff paid the executors nothing
for the purported assignment to him of the $2,000 mortgage, the
learned trial justice decided that the $1,500 mortgage given by the
testator and his wife, which was to be paid out of the proceeds of the
sale of said $2,000 mortgage, was not a valid claim against the estate
in the hands of the executors, and ought not to be paid from the pro-
ceeds thereof.   This $1,500 mortgage was upon the land which the
testator during his lifetime gave without any valuable consideration to
his widow.   Under those circumstances, we think the land covered by
the mortgage was the primary fund out of which it should be paid, and
that it was unlawful for the widow and her coexecutors to attempt from
the general property of the estate to pay it off, so as to relieve there-
from the property presented to her individually before the death of the
testator.   Matter of Wilbur v. Warren, 104 N. Y. 192, 10 N. E. 263.
The decree obtained by the executors, purporting to allow them to sell
the $2,000 mortgage, expressly provided the purposes to which the
proceeds of such sale should be applied. • Plaintiff has urged strenuous-
ly, in effect, that in paying the $2,000 mortgage he relied upon this
decree permitting its sale.   He therefore knew that he was buying it
for the purpose of furnishing money with which to pay the $1,500
mortgage.   The records showed that the $1,500 mortgage was upon
land which the testator had given to his widow.   He therefore knew,
or might have known, all of the facts which in our opinion make it
illegal that the property of the estate should be applied to the payment
of the $1,500 mortgage, and it is doubtful whether, in purchasing, as
he claims he did, the $2,000 mortgage for the purpose of furnishing
funds which he had notice were to be applied to the payment of the
illegal claim, he can invoke that immunity which ordinarily attends a

person who in good faith has dealt with trustees, even though, after taking his money, they have applied it to improper purposes.

The learned trial justice has in effect found that there was a general conspiracy between Mrs. Easterly and the plaintiff to so manipulate the Hadden mortgages as to defraud the estate of the testator and the remaindermen therein. In view of the conclusions which we have reached upon other questions and issues already discussed, we deem it unnecessary to consider in detail these findings and conclusions. Some general observations, however, are suggested. If one should bring himself to assume that the present executors, Mrs. Easterly and Mr. Lamoree, acted in perfect good faith and with an eye single to the welfare of all of the different interests in the estate represented by them in devising the theory to perpetuate and utilize the Hadden mortgages, such a one must, we think, still inevitably be impressed with the strange and inefficient methods taken to carry out such theory, and the woeful lack of success and benefit which would result therefrom to the estate as a whole. The great object in taking a transfer of the mortgages from Hadden was to prevent a foreclosure and waste of the estate and to create assets which might be used in paying off debts. After those mortgages for such purpose had been taken up, the $2,000 mortgage was assigned to plaintiff by an instrument which was not fully acknowledged until January 11, 1899, and the purported assignment was not recorded until February 20, 1899. The plaintiff thinks that the $2,500 mortgage, of which the purported assignment was dated much earlier, was transferred to him at about the same time. Within about six weeks, or upon April 1, 1899, we find the plaintiff, a brother of Mrs. Easterly, a man of property and investments, and to whom these mortgages had in form been transferred for the protection of the estate, prosecuting a foreclosure upon them. With great promptness he was setting out upon that very course of hostility and destruction to the estate which the executors say they had been so anxious to avoid from Mr. Hadden. In instituting these proceedings, strangely enough, he sends the mortgages for foreclosure to Mr. Lamoree, his own brother-in-law, and the brother-in-law and coexecutor of Mrs. Easterly. Although the property covered by the mortgages is said to have been worth three or four times their amount, and although the premises covered thereby were producing a yearly rental of $1,700, as against an annual interest upon the mortgages of between $400 and $500, no effort seems to have been made to stop these foreclosures, or to secure concert of action by the parties interested in the estate, or to procure temporary refunding or carrying of the same until some provision for their permanent disposition could be made; but Mr. Lamoree promptly turns them over to an attorney to be foreclosed. When the sale upon the $2,000 mortgage occurred, plaintiff did not deem it necessary or worth while for him to attend the same; but he left the entire management to the attorney who had been selected by Mr. Lamoree. Mrs. Easterly appeared as a bidder, and when the third executor, Mr. Reed, made a bid starting a competition which should have been welcomed by all parties interested, the sales were stopped, and the foreclosure proceedings speedily discontinued. It was not until after this third executor had been allowed to extricate

himself from the duties and obligations of his position in reference to
this estate that second foreclosure proceedings, the present actions,
were promptly started up again by plaintiff.

Again, if these actions should succeed, the net result will be that
the real estate left by the testator will be taken away from the remain-
dermen under his will and appropriated to the payment of $4,500 of
indebtedness originally held by the widow, and which the trial justice
has, as we think correctly, found does not constitute a valid claim
against the estate. Whatever may be said in defense of Mrs. Easterly
as inexperienced in business matters and ignorant of the law, it seems
pretty plain that Mr. Lamoree, a lawyer and a man of experience, in
consenting to act as executor, with equal duties towards all of the
parties interested in his testator's estate, and at the same time as friend
and adviser of his sister-in-law, the widow, and as adviser and agent
of the plaintiff in his hostile proceedings against the estate, has been
attempting to carry a burden of divergent obligations and interest
which are seldom borne by one person with satisfaction to all of the
parties interested, or with credit to himself, or with the sanction of
those sound principles of law and justice which govern trust relations.

Upon the trial various objections were taken to the rulings of the
court, none of which in our opinion require a reversal of the judg-
ment, and to only part of which do we deem it necessary to refer.
Before trial, at the instance of the respondents, the examination of
Eliza H. Easterly was taken. This evidence was offered and received
upon the trial, and plaintiff now urges various objections to that
course. It is said that the examination covered certain things which
were not competent, and that opportunity should have been given
upon such prior examination for cross-examination, and that the evi-
dence was offered as a whole, instead of being read by question and
answer. If any real objection did exist in these respects to the course
pursued, we think it was waived and lost by not being seasonably
taken upon the trial; for we find in the record no objection made which
presents such grounds of complaint.

It is further urged that the responding defendants have no right to
take and use the evidence upon the trial, because Eliza H. Easterly
was present at the latter, and therefore might have been examined at
that time. Plaintiff presumably bases this objection upon section
882 of the Code of Civil Procedure, which in substance provides that
a deposition like the one in question, taken before trial, except in the
case of an adverse party, shall not be read unless it appears that the
party examined has died or is unable to be in attendance, etc. Plain-
tiff's theory is that Mrs. Easterly was not an adverse party, being a
codefendant, and that, being present upon the trial, there was no ex-
cuse for reading her prior examination. We do not find any basis for
any complaint that the evidence of the witness was not procured and
taken in a proper and regular way. So far as appears, no appeal was
taken from the order directing her examination, and no motion made
to suppress the evidence thus taken. We doubt if the objection made
when the testimony was offered in evidence was sufficient to present the
objection that it could not be used under the provisions of the Code
just referred to, because no proof had been made that the attendance

of Mrs. Easterly could not be procured upon the trial. It was, in substance, simply stated as an objection to the use of the testimony that Mrs. Easterly was present in court. This was hardly sufficient to call to the attention of the court the provisions of the Code, and the contention of the objecting party, if he really had it in mind at the time, that such a deposition could not be used without proof that the examined party could not be produced upon the trial.

If, however, the objection was sufficient to fairly present the question, we further think that Mrs. Easterly was an adverse party within the meaning of the Code, and that therefore it was proper to use her deposition. There can be no question but that actually the interests of the respondents and of herself are hostile and opposing, although they are codefendants. Such adverse interests also appear technically upon the record of this litigation. The judgments which have been rendered adjudicate, as between these parties, that the note for $3,000 and the mortgage for $1,500, already sufficiently referred to and described, are not claims against the estate and property of the decedent in which the responding parties are interested. Such adjudication is in favor of the respondents, and directly adverse to the interests of Mrs. Easterly, as the person who has assigned and guarantied the note to plaintiff, and who also is interested in having paid the $1,500 mortgage in question. Her attitude, as evidenced by her answer in the case, is in friendliness and accord with that occupied by the plaintiff. Cross-answers in behalf of the responding defendants who offered the deposition in evidence, have been served upon her as provided by the Code.

We think there is still another answer to the objections made to the introduction of this deposition which would justify our refusal to reverse the judgment on account thereof. Mrs. Easterly was called and examined as a witness upon the trial. Upon her examination and cross-examination the same facts were so far developed which appear in the deposition that we think the latter could have caused no material injury, even if improperly received under technical rules.

Near the close of the trial respondents were allowed to amend their answer, so as, among other things, to expressly charge plaintiff with notice and knowledge of certain illegal acts already in the answer alleged against Mrs. Easterly as a defense, and also so as to expressly charge plaintiff in effect with being a party to various acts already set up as a defense. Complaint is made because such amendment was allowed. Various reasons are now urged by plaintiff why such amendment should not have been made. He insists, in effect, that it was unfair and disadvantageous to him to have such amendment made late in the trial of the action. It is a sufficient and complete answer to this to say that, in the first place, no such objection was urged when the amendment was made, and, in the second place, that we do not think he was prejudiced in any such way as is now claimed. He further urges that this amendment was made for the purpose of making the pleading conform to the proofs, and then calls to our attention various undoubted and undisputed authorities that, where evidence is objected to as inadmissible under the pleadings and admitted, such error cannot be cured by subsequent amendment of the pleadings to conform to the proofs. We may concede that there is no doubt about

this rule of law, and still express our inability to see its application to the facts of this case. To our mind the evidence competent and proper to sustain the defenses to the foreclosure of plaintiff's mortgages hereinbefore approved by us was admissible under defendants' answer as it originally stood. We do not think that the amendment broadened the scope and character of the testimony which might be offered and was necessary to sustain the defenses in question. Moreover, among all of the objections by appellant called to our attention in his argument of this point, there is not one that the evidence offered was inadmissible under the pleadings. We have been able to find one place where a motion was made to strike out as inadmissible evidence which had been offered and received without any objection; but, of course, such motion was addressed to the discretion of the court, and furnishes no ground of reversible error, even if the evidence was not admissible as against an objection taken in a proper and timely manner. There being this failure to object to evidence as inadmissible, there is no basis for the application of the rule. and authorities called to our attention.

The judgment and order granting an extra allowance of costs of $167.38 should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.