the will presumptively valid, and it remains so until the presumption has been overcome by a judgment rendered on the verdict of a jury to the contrary. This action is purely a statutory one, providing for a trial of the validity of the will by jury. This court has the power to stay final distribution, as held in Shea v. Bergen, 59 Misc. Rep. 294, 110 N. Y. Supp. 572, affirmed in 126 App. Div. 934, 110 N. Y. Supp. 1145; but we doubt the existence of power to prevent the executor taking possession of the estate where letters of administration have been revoked. As indicating the policy of the law we need but call attention to the fact that by the provisions of section 2583 of the Code of Civil Procedure it is declared that an appeal from a decree of the surrogate revoking letters testamentary or letters of administration shall not stay the execution of the decree or order appealed from. The executor has given and filed a bond for $18,000 for the faithful discharge of his duties as executor. If he wastes or squanders the estate, he does it at his peril.

An order may be entered vacating the preliminary injunction heretofore granted in so far as it restrains and enjoins the defendant Murphy from taking any action or further proceeding in the Surrogate's Court relating to the settlement of the accounts of Joseph A. Labbee and Mary A. Dooley as administrators, and the payment and delivery to said defendant Murphy of the property and estate of said Roch Labbee, deceased. This plaintiff, however, may enter an order restraining and enjoining the executor from making any final distribution of said estate until the trial and final determination of this action, and also providing that any papers and documents belonging to said estate, outside of securities, shall be deposited with the clerk of the county of Erie and be open to the inspection of all parties to this action.

So ordered, without costs of this motion to either party.

---

(63 Misc. Rep. 472.)

### In re SLOANE.

#### (Surrogate's Court, Westchester County. May, 1909.)

EXECUTORS AND ADMINISTRATORS (§ 49*)—ACCOUNTING—ASSETS.

　　A person involved financially, and against whom a judgment had been recovered and another action commenced, executed a power of attorney to his wife giving her general power to manage his affairs, and thereafter disappeared and was not again seen for several months, when he was found very ill and soon died. After his disappearance his wife arranged for an advance from the trustee of his father's estate to satisfy the judgments and as security executed, as attorney for her husband and individually, a bond and mortgage upon the real estate where she resided and delivered the same to the trustee, who paid the judgments and took assignments thereof. Thereafter the husband quitclaimed to his wife the mortgaged property. The bond and mortgage were carried by the trustee as an investment, and upon a settlement of the estate were assigned to the wife, who was then administratrix of her husband, on account of his distributive share in his father's estate, and at the same time the trustee satisfied the judgments. Held, that the bond and mortgage, and not the judgments, were the principal debt and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not discharged by the satisfaction of the judgments, but became assets in the hands of administratrix, upon assignment to her, for which she must account.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 301; Dec. Dig. § 49.*]

In the matter of the judicial settlement of the accounts of Grace S. Sloane, as administratrix of the estate of Douglas Sloane, deceased. Objections to account sustained.

Gould & Wilkie, for administratrix.

Strauss & Anderson (Eugene D. Boyer, of counsel), for contestant.

Theodore M. Hill, special guardian.

MILLARD, S. The account of the administratrix was filed in the office of the surrogate of the county of Westchester on the 23d day of June, 1908, and a citation duly issued to all parties interested in said estate, returnable on the 20th day of July, 1908. Said citation was returned duly served on all parties interested July 20, 1908. On July 23, 1908, Theodore M. Hill was appointed special guardian for Douglas Sloane and Anna M. Sloane, two of the heirs at law and next of kin of said Douglas Sloane, deceased. On December 10, 1908, said special guardian filed objections to the account of said administratrix in behalf of said infants, and on December 8, 1908, Strauss & Anderson, attorneys for Maggie Jackson Sloane Mills, another of next of kin of said deceased, filed objections to said account. Previous to the filing of said objections, and on the 3d day of December, 1908, said administratrix filed a supplemental account of her proceedings. The objections of the special guardian and the attorney for Maggie Jackson Sloane Mills are similar in all respects, and can be treated as if but one set of objections had been filed.

Douglas Sloane died intestate, on or about September 11, 1892, leaving him surviving his widow, Grace S. Sloane, the administratrix in the proceedings, and the three children, Maggie Jackson Sloane Mills, Douglas Sloane, and Anna M. Sloane, and a child since deceased, as his only heirs at law and next of kin. His widow was duly appointed administratrix of his estate on the 21st day of October, 1895. Douglas Sloane, the decedent in this matter, was the son of Douglas Sloane, who died in 1872, leaving his estate to his brother John Sloane, as trustee, to pay the income to the widow for life, with remainder to his three children, of whom Douglas Sloane was one.

In 1891 Douglas Sloane became involved financially, and on December 5, 1891, a judgment was recovered against him in Westchester county by the Manufacturers' Finance & Trust Company for $15,554.39, and, on January 26, 1892, an action was commenced against him in New York county by Lydia A. Peck for $4,000 money loaned. On the 5th day of February, 1892, he executed a power of attorney to his wife, the administratrix in this proceeding, giving her general power to manage his affairs, to raise money to pay his debts, and thereafter disappeared. He was not seen again until several months later, when he was found very ill, taken to a hospital, and died, as above set forth.

After his disappearance, his wife, Grace S. Sloane, the adminis-
tratrix herein, consulted with John Sloane, the trustee of the estate
of Douglas Sloane, her husband's father, in reference to his affairs,
and, in order to protect the remainder interest of Douglas Sloane from
sale under execution, she arranged an advance of a sufficient sum out
of the trust estate to satisfy the Manufacturers' Finance & Trust Com-
pany and Lydia A. Peck claims. In order to do this, she, as attorney
in fact, for her husband, Douglas Sloane, and individually, executed
a bond and mortgage upon the real estate where she resided at Rye,
in the county of Westchester, for the sum of $15,000, and delivered
the same to John Sloane, as trustee of the estate of Douglas· Sloane,
by whom said funds were advanced. This bond and mortgage bears
date February 11, 1892, was payable in one year, with interest at 5
per cent., and recorded in the Westchester county register's office in
Liber 1002 of Mortgages, p. 406. The attorney for the trustee upon
the execution of this mortgage paid to the Manufacturers' Finance
& Trust Company the sum of $10,683.33, and received from it an as-
signment of its judgment to the trustee, John Sloane, dated February
10, 1892, which assignment was filed February 12, 1892, in the county
clerk's office in Westchester county, and, on April 25, 1892, he paid
to Lydia A. Peck $4,232.93, and received a similar assignment of her
judgment which had been docketed February 17, 1892, filing the as-
signment in Westchester county. The bond and mortgage executed
as above was carried on his books by the trustee, among other bonds
and mortgages in which the trust estate was invested, for the sum of
$14,916.26, the amounts which he had paid out as above. On the 10th
day of August, 1892, Douglas. Sloane executed a quitclaim deed to
his wife of the Portchester property, upon which this mortgage was
given, and this deed was recorded in the Westchester county regis-
ter's office on the 11th of August, 1892, in Liber 1284 of Deeds, p. 56.

It is claimed in this proceeding that some time in 1889 Sloane had
given a deed to his wife of this property, but it was never recorded,
and no delivery of the same can be proven except by her statement.
In connection with this matter the administratrix has filed a number
of affidavits. Her own affidavit, referring directly to a transaction
with the deceased, I feel cannot be considered, as she certainly would
not be allowed to testify to the facts therein stated if upon the wit-
ness stand in court. None of the other affidavits prove execution and
delivery of a deed, but simply refer to statements made in connection
therewith, and, while they might be considered for what they are
worth, if it was a question which this court had jurisdiction of, having
none, I do not feel that they can affect the matter in any way, as I
am certain that in this proceeding I cannot try the title to real estate.

John Sloane, the trustee of Douglas Sloane, the elder, having died,
the United States Trust Company was appointed in his place, and up-
on the death of the life tenant, on the 18th day of February, 1906,
proceeded to wind up and distribute the estate of Douglas Sloane,
the elder, and on December 17, 1906, it assigned to Grace S. Sloane,
as administratrix, the bond and mortgage of February 11, 1892,
credited her on its books with the payment of $14,916.26, and debit-
ed her with a similar sum as received by her on account of the dis-

tributive share of her intestate, Douglas Sloane. It also debited and credited her with the sum of $7,094.22, the interest thereon from its date until the death of the life tenant, on the 18th of February, 1906. The administratrix in this proceeding charges herself with the full amount of the estate received from the trustee, and then credits herself with the amount of this mortgage and the interest paid thereon as above, and it is to these items that the objections are filed on behalf of her children, the next of kin of said Douglas Sloane.

Grace S. Sloane, the administratrix in this proceeding, was a party to the accounting proceedings of the United States Trust Company, and no objection was made by her to the accounts as filed by the United States Trust Company, and the accounts were judicially settled as presented. In Schedule A of said account it charged itself, under heading of "bonds secured by mortgages covering real estate," bond of Douglas Sloane, $14,916.26 (Schedule G, folio 16). This condition was admitted by counsel for administratrix on the hearing before me. The judgments above referred to were satisfied by the United States Trust Company, to whom they had been assigned; but they did not satisfy the bond and mortgage upon the real estate, but assigned the same as above set forth to Grace S. Sloane, the administratrix herein, who herself afterward satisfied it.

It is claimed by the attorneys for the administratrix herein that the judgments in this case are the primary debts, while the attorneys for the objectants claim that the bond and mortgage is the primary debt, and each proceeds to argue, assuming that he is correct in that respect. I am inclined to believe that the bond and mortgage should be considered the primary debt, because if it were not for this I do not believe the trustee of Douglas Sloane, the elder, would have advanced any money from that estate. He was not authorized by law to use the funds of the estate to buy these judgments or make a loan of said funds, taking these judgments as security therefor; but he was, as trustee, authorized to invest the funds of his estate in bond and mortgage, and I think it must be presumed that, as an official of the court acting under his oath of office, he did what the law requires, rather than something which would be held to be illegal if the matter were called to the attention of the court. I therefore believe that the transaction, as viewed by him, was an investment of $14,916.26 upon real estate in the town of Rye, which belonged to Douglas Sloane, and that his attorney advised him to take the assignment of these judgments as collateral to the mortgage for the purpose of showing how the proceeds of this mortgage were used by him, or for any other purpose which might be deemed necessary. It could not be very well said that a mortgage dated February 11, 1892, could be given as collateral security to a judgment which was not recovered until after that date.

The account in this proceeding, as originally made by the administratrix, and before her attention was called to the objections which were to be made and filed in this case, shows that she herself considered that she paid the bond and mortgage from the estate. See Schedule D, where she claims an allowance for "bond of Douglas Sloane to John Sloane, as trustee, and secured by joinder of his wife

in the obligation and her mortgage of her house at Portchester, N. Y., dated February 11, 1892, and paid by administratrix December 17, 1906, $14,916.26." And again, as to the other payments for interest referred to in the same schedule, wherein she asks credit for "interest on the bond and mortgage above mentioned, so paid by the administratrix to John Sloane, as trustee, and his successor during the period from the making of said bond and until payment of principal thereof on December 17, 1906."

To my mind therefore it is clear that the trustee intended the bond and mortgage to be the primary debt, and I believe the administratrix herself so intended it, and I cannot help but believe that it was suggested to her by her attorney that it be credited in the other way. "It is the settled doctrine in equity that one who purchases land subject to a mortgage makes the land thereby the primary fund for the payment of the mortgage debt." Matter of Wilbur v. Warren, 104 N. Y. 197, 10 N. E. 263.

The case of Hetzel v. Easterly, 96 App. Div. 517–529, 89 N. Y. Supp. 154–162, was a case almost identical with the case at hand, and there the court said:

"This $1,500 mortgage was upon the land which the testator during his lifetime gave without any valuable consideration to his widow. Under those circumstances, we think the land covered by the mortgage was the primary fund out of which it should be paid, and that it was unlawful for the widow and her coexecutors to attempt, from the general property of the estate, to pay it off so as to relieve therefrom the property presented to her individually before the death of the testator."

In the case before me, Douglas Sloane, six months after the making of the mortgage by his wife, individually and as attorney in fact for him, conveyed the property to her by a quitclaim deed and she then became the owner; and, in view of the decisions, I believe that the mortgage given by her was a lien thereon, and that the land covered by it became a primary fund for the payment of that mortgage. The fact that the deed was a quitclaim deed is an evidence to my mind of the fact that Douglas Sloane, the maker of it, was of the opinion and intended that only the equity of redemption, after this mortgage had been paid, was to go to his wife; otherwise there would have been no occasion for making a quitclaim deed.

It is also equally well settled that an executor or trustee holding a claim against the trust estate is required to prove the same by the strongest kind of evidence, and, in this case, the allowance to the widow of the amount paid for this mortgage and interest would be allowing a claim to her against the estate and should not be done, where the only other parties interested are her own children, unless the strongest kind of legal proof is produced in support thereof.

If this claim is allowed to the widow, she then becomes the owner of the real estate which Douglas Sloane owned on the 11th day of February, 1892, when the mortgage was made, free and clear of all incumbrance. This would not have been the case had the payment of the judgments been enforced at the time they were obtained. The most natural thing for these creditors to have done would have been to have levied upon this real estate and sold it, and the judgments would have been satisfied from it. This is certainly the natural

course of events, rather than to believe that they would have taken the proceedings necessary to have acquired the rights of Douglas Sloane in. the remainder in his father's estate, with which they could do nothing until after the death of the life tenant. They would naturally have taken the property, which would have brought their money in the shortest possible way.

I think therefore it is both just and equitable that this same course should be pursued, and that the estate of Douglas Sloane should be adjudged the owner of the bond and mortgage which was assigned to the administratrix in this proceeding as against the property in Rye; but, as she has already satisfied it, that the same, together with the interest paid thereon, should be deducted from her share of said estate.

I therefore sustain the objections made to the said account and will sign a decree in accordance with this decision.

Decreed accordingly.